259 So.2d 153 (1972)
STATE of Florida, Plaintiff,
v.
George SILVA, Defendant.
No. 42051.
Supreme Court of Florida.
February 22, 1972.
Rehearing Denied April 3, 1972.
*155 Robert L. Shevin, Atty. Gen., and Reeves Bowen, Asst. Atty. Gen., Richard E. Gerstein, State's Atty., and William Tunkey, Asst. State's Atty., for plaintiff.
Joel Hirschhorn, Miami, for defendant.
ADKINS, Justice.
In accordance with Rule 4.6, Florida Appellate Rules, 32 F.S.A., the Honorable Milton A. Friedman, one of the Judges of the Circuit Court for Dade County, Eleventh Judicial Circuit of Florida, has certified to this Court for instruction the questions of law set forth below. The pertinent portion of the Certificate reads as follows:

"STATEMENT OF FACTS
"The defendant Silva, has been charged by Indictment with the offense of rape pursuant to Florida Statute 794.01 to which charge the defendant has entered his plea of not guilty. Prior to arraignment, the defendant Silva, with leave of the Trial Court, reserved the right subsequent to arraignment to file Motions to Dismiss the Indictment. Subsequent to arraignment of this cause and prior to trial, said motion to dismiss or in the alternative to exclude the jury panel was filed pursuant to FRCrP 3.300, F.S. § 40.01(1), (3), and F.S. § 97.041. Subsequently, the said motion to dismiss the Indictment or in the alternative to exclude the entire jury panel was amended. The Trial Court requested memoranda of law from both parties and subsequently perused said memoranda, heard oral argument of counsel for the State and counsel for the Defendant, and pursuant to a stipulation between counsel for the State and counsel for the Defendant, examined the depositions of both Dade County Jury Commissioners, Thomas Lummus, Esq., (taken in the Eleventh Judicial Circuit *156 Court Case, Criminal #2844, State of Florida v. Kelsey Bethel) and Joseph D'Apice (taken in the Eleventh Judicial Circuit Court Case, Criminal #2866, State of Florida vs. George Silva), which said depositions are attached hereto for the record on certification.
"The Trial Court made the following findings of fact in regards to the certified questions of law:

FINDINGS OF FACT
"1. The defendant, George Silva, duly and properly presented this Challenge to the Jury Venire list and jury panel pursuant to FRCrP 3.300, and F.S. 40.01(1), (3); and F.S. 97.041.
"2. Since at least 1966, with the appointment of Attorney Thomas Lummus as Dade County Jury Commissioner, a quota system has been employed in connection with the selection of jury lists in Dade County to either exclude or include a certain fixed percentage 15% to 19%) of the qualified black citizens of Dade County who are registered voters. Also, an attempt to keep the number of qualified women the same as qualified men has been made.
"3. Since at least April, 1971, with the appointment of Mr. Joseph D'Apice as Dade County Jury Commissioner, an even more selective, arbitrary and discriminatory method of compiling monthly jury lists in Dade County has been in use whereby a prospective juror's race, religion, sex, national origin and economic status has been subject to scrutiny by this Jury Commissioner.
"4. The findings in Paragraphs two and three are based primarily on the respective depositions of both Attorney Lummus and Mr. D'Apice which were admitted into evidence by stipulation of the attorneys for the State and the Defendant; in addition the Court takes notice of the remarks of Mr. D'Apice to both the newspapers and television reporters with respect to his method of selecting names for the jury lists.
"5. The specific sworn statements of the said Jury Commissioners which are the basis for the finding of deliberate, arbitrary and improper jury list selection are found in the transcript of the hearing on the Amended Motion at pages 23 to 30. (which is attached hereto for the record on certification and which is incorporated by reference in these findings of fact)
"6. The jury list for the month of March, 1972, was drawn by a scrutinized and systematic method and not at random.
"7. The jury commissioners select prospective jurors and compile the monthly jury list from a list of those eligible to vote, who have registered to vote in Dade County, Florida.
"8. The names of all those persons between the ages of eighteen and twenty (at the time of voter registration), are systematically excluded from the master list of those who have registered to vote and who are otherwise qualified to serve as jurors.
"9. Similarly, the names of all those persons engaged in certain occupations, such as doctors, registered nurses, and religious leaders, are systematically excluded from the master list of prospective jurors.
"10. Finally, the Court finds that no single person is able to select prospective jurors out of a list in excess of 500,000 people on the basis of his own knowledge of the prospective juror's integrity, intelligence, good character and sound judgment.
"Subsequently the Court entered the following orders pertaining to the certified questions of law:
"1. That the ruling on whether the jury venire is tainted, is deferred pending certification to and adjudication by the Florida Supreme Court.
"2. That the ruling on whether 18, 19 and 20 year old registered voters should be permitted to serve on juries is deferred *157 pending certification and adjudication by the Florida Supreme Court.
"3. That the ruling on whether F.S. § 40.01(3) is constitutional, is deferred pending certification to and adjudication by the Florida Supreme Court.

"CERTIFIED QUESTIONS OF LAW
"1. Whether the manner in which jury panels are presently selected and constituted in Dade County, Florida, as set out in the statement of facts (see above) and in the order of the Trial Judge (which is attached hereto for the record on certification) violated the due process and the equal protection clauses of the United States Constitution, Amendment Five, as made applicable to the states by the Fourteenth Amendment of the United States Constitution and Article I, Section 9 of the Florida Constitution, and/or whether the manner in which jury panels are presently selected and constituted in Dade County, Florida, as set out in the statement of facts (see above) and in the order of the Trial Judge (which is attached hereto for the record on certification) violates the Sixth Amendment of the United States Constitution as made applicable to the states by the Fourteenth Amendment and Article I, Section 16 of the Florida Constitution wherein it is provided that an accused in a criminal prosecution shall have the right to a speedy and public trial by impartial jury.
"2. Whether Florida Statutes § 40.01(1), dealing with the qualifications of jurors, wherein only persons of the age of 21 years or older are qualified to act as jurors, is constitutional in light of the Twenty-Sixth Amendment of the United States Constitution wherein it is provided that `the right of citizens of the United States who are 18 years of age or older to vote shall not be denied or abridged by the United States or by any State on account of age.'
"3. Whether F.S. § 40.01(3), dealing with the qualifications of jurors, wherein it is stated that: `In the selection of jury lists, only such persons as the selecting officers know, and have reason to believe are law-abiding citizens of approved integrity, who are of good character, sound judgment and intelligence ...' is void for vagueness, and impossible to be carried out, and/or in violation of the due process of law clauses of the Fifth and Fourteenth Amendments of the United States Constitution and the Florida Constitution on the ground that said F.S. 40.01(3), is an unlawful delegation of authority to the Jury Commissioner in and for Dade County, Florida, since it is conceded by counsel for the State and counsel for the Defendant that in Dade County, Florida, there are approximately 522,000 registered voters."
The order of the trial judge referred to in the first certified question contains the following:
"2. Since at least 1966, with the appointment of Attorney Thomas Lummus as Dade County Jury Commissioner, a quota system has been employed in connection with the selection of jury lists in Dade County to either exclude or include a certain fixed percentage (15% to 19%) of the qualified Black citizens of Dade County who are registered voters; and an attempt to keep the number of qualified women, the same as qualified men has been made.
"3. Since at least April, 1971, with the appointment of Mr. Joseph D'Apice as Dade County Jury Commissioner, an even more selective, arbitrary and discriminatory method of compiling monthly jury lists in Dade County has been in use whereby a prospective juror's race, religion, sex, national origin, economic status and political affiliation has been subject to scrutiny by this Jury Commissioner.
"4. The findings in Paragraphs two and three are based primarily on the respective depositions of both Attorney Lummus and Mr. D'Apice which were admitted into evidence by stipulation of the attorneys for the State and the Defendant; in addition the Court takes notice of the remarks of Mr. D'Apice to both the newspapers *158 and television reporters with respect to his method of selecting names for the jury lists.
"5... . It is sufficient to say that the Court finds there has been willful, deliberate, arbitrary (albeit well intentioned) and systematic exclusion, or inclusion, of the following identifiable and cognizable groups: race, color, sex, religion, occupation, political affiliation, and national origin."
A question or proposition certified directly to this Court by a Circuit Court must be one which, if decided by the Circuit Court, would be reviewable on direct appeal from that Court to this Court. See Jaworski v. City of Opa-Locka, 149 So.2d 33 (Fla. 1963). If this cause proceeded to final judgment the trial court would, by necessity, pass upon the validity of a state statute or construe a controlling provision of the United States Constitution. An appeal would then lie to this Court. Fla. Const., art. V, § 4(2), F.S.A. We have jurisdiction and may answer the questions certified by the trial judge.
At the outset, we recognize that the Dade County jury commissioners exercised their best judgment in making personal selections of jurors after serious thought. In their faithful effort to administer the law fairly and impartially, they selected jurors from a cross-section of the community. Their zealous efforts to abide by the law, however, resulted in a violation of rules and principles established by the United States Supreme Court. Proportional racial limitation has been forbidden by that Court. We will, of course, follow the mandate of our highest Court.
Although we are required to hold that there were arbitrary exclusions in the selection of the jurors, those who have been convicted can receive no comfort from this decision. A challenge to the panel, or challenge to the array, is used to question the selection or drawing of prospective jurors. Such a challenge must be made and decided before any independent juror is examined, unless otherwise ordered by the Court. FRCrP Rule 3.300, 33 F.S.A. Such an objection comes too late after verdict and has no place in a motion for new trial or in arrest of judgment. By going to trial before a jury without any objections, a defendant waives all irregularity in the drawing, summoning and impaneling of such jurors. Green v. State, 60 Fla. 22, 53 So. 610 (1910); Lake v. State, 100 Fla. 386, 129 So. 833 (1930); 14 F.L.P., Jury, § 111; 20 Fla.Jur., Juries, § 68.
In answer to the first question, the United States Supreme Court has held that it is not legally permissible for jury commissioners to place purposely on a jury list the names of white persons and black persons in proportion to the population in the community. We reluctantly follow the mandate of that Court and answer the first question in the affirmative.
A similar question was involved in Shepherd v. State, 341 U.S. 50, 71 S.Ct. 549, 95 L.Ed. 740 (1951), in which the decision of this Court, Shepherd v. State, 46 So.2d 880 (Fla. 1950), was reversed without opinion on the authority of Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1950). Although the United States Supreme Court delivered no opinion in the Shepherd case, the summary on page 740 of 95 L.Ed. states:
"In a PER CURIAM opinion the Supreme Court reversed a state court conviction of Negroes upon the sole ground that the method of selecting the grand jury discriminated against the Negro race." (Emphasis supplied)
The type of discrimination involved in the Shepherd case was stated in the brief of counsel for petitioners as follows (page 741 of 95 L.Ed.):
"Petitioners were denied the guaranties of the Fourteenth Amendment in that the jury was chosen in furtherance of an admitted policy of selecting jurors according *159 to a system of purposeful racial proportionate representation which limited the numbers of Negroes serving on juries because of their race. See Cassell v. Texas, 339 U.S. 282, 94 L.Ed. 839, 70 S.Ct. 629; ... ." (Emphasis supplied)
The method of selecting jurors was described in the opinion of this Court (Shepherd v. State, 46 So.2d 880, 884) as follows:
"The Supervisor of Registration testified that Lake County had 14,182 voters. His record disclosed 13,380 white voters and 802 colored voters. Frank E. Owens, Chairman of the Board of County Commissions of Lake County, Florida, testified that he and other members of the Board prepared the list of jurors during January, 1949, and in so doing selected and placed on the jury list the names of white and colored persons. The names were taken from the voters registration list of Lake County in proportion to the number of white and colored persons whose names were on the voters registration books. The rule as testified about had been observed in Lake County for many years."
The only condemnation of proportional representation of races on a jury list in Cassell v. Texas, supra, occurs in the following remarks in the opinion of Mr. Justice Reed, concurred in by the Chief Justice, Mr. Justice Black and Mr. Justice Clark:
"Jurymen should be selected as individuals, on the basis of individual qualifications, and not as members of a race.

"We have recently written why proportional representation of races on a jury is not a constitutional requisite. Succinctly stated, our reason was that the Constitution requires only a fair jury selected without regard to race. Obviously the number of races and nationalities appearing in the ancestry of our citizens would make it impossible to meet a requirement of proportional representation. Similarly, since there can be no exclusion of Negroes as a race and no discrimination because of color, proportional limitation is not permissible. That conclusion is compelled by the United States Code, title 18, § 243, based on § 4 of the Civil Rights Act of 1875. While the language of the section directs attention to the right to serve as a juror, its command has long been recognized also to assure rights to an accused. Prohibiting racial disqualification of Negroes for jury service, this congressional enactment under the Fourteenth Amendment, § 5, has been consistently sustained and its violation held to deny a proper trial to a Negro accused. Proportional racial limitation is therefore forbidden. An accused is entitled to have charges against him considered by a jury in the selection of which there has been neither inclusion nor exclusion because of race." (Emphasis supplied) [Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839, 847]
When the United States Supreme Court cited Cassell v. Texas, supra, as the sole authority for reversing this Court in Shepherd v. State, supra, which was clearly a case of proportional representation of races, the only reasonable conclusion is that the United States Supreme Court was referring to Mr. Justice Reed's above-quoted remarks.
In Porter v. State, 160 So.2d 104 (Fla. 1964), we said:
"Lest our discussion above be misinterpreted we hasten to explain that we do not in anywise hold that any sex, race or identifiable segment of our population is entitled to proportionate representation on jury lists or juries. The Supreme Court of the United States has repeatedly held that proportioned class representation is not required. .. . Quite to the contrary, that court has held that selection of jury lists on a basis of proportional representation is invalid. *160 While selection from classes or groups on such a basis does guarantee representation, at the same time it imposes a limitation on the number from each class or group. This is prohibited ... ." (Emphasis supplied) (p. 109)
The following appeared in 47 Am.Jur.2d, Jury, § 175, p. 767:
"Fairness in the selection of a jury does not require proportional representation of races. Thus, a lack of proportional representation of races on a jury does not constitute discrimination. On the other hand, while proportional representation of races on a jury is not a constitutional requisite, proportional racial limitation is prohibited."
The tradition of trial by jury, considered in connection with either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross-section of the community. This does not mean, however, that every jury must contain representatives of all the economic, social, religious, racial, political and geographical groups of the community, for such complete representation would frequently be impossible. But it does mean that prospective jurors must be selected at random by the proper selecting officials without systematic and intentional exclusion of any of these groups. Recognition must be given to the fact that those eligible for jury service are to be found in every stratum of society. Jury competence is an individual rather than a group or class matter. See Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181 (1945). Selection from classes or groups on a proportion basis guarantees representation, but at the same time places a limitation on the number from each class or group. This is forbidden.
The choice of the means by which unlawful distinctions and discriminations are to be avoided rests largely in the sound discretion of the selecting officers. This discretion, of course, must be guided by the mandates of the Supreme Court of the United States. Proportional limitation by race, sex, or creed is prohibited.
Petitioner questions the validity of the procedure in using jury selection index cards containing a notation designating the prospective juror as being black or white, and contends that this in itself is prima facia proof of discrimination under the ruling of the United States Supreme Court in Avery v. Georgia, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1952). In the Avery case, a negro was convicted in a state court on a charge of rape. In selecting jurors, the drawings were made from a box containing white tickets bearing the names of white veniremen and colored tickets bearing the names of black veniremen. Although the Judge who picked out the tickets denied any discrimination, not a single black was in the panel, though many were available. The Supreme Court of the United States reversed the conviction holding that defendant had made a sufficient showing of discrimination in the organization of the particular panel involved. The decision rested on the ground that the use of separately colored tickets constituted prima facie evidence of discrimination. This presumption, coupled with the absence of any blacks on the panel, established a prima facie case which placed the burden on the State to dispel the prima facie case of discrimination. This the State failed to do.
The designation of a prospective juror as being black or white does not, in itself, invalidate the jury selection. However, by using such designation, the State is saddled with the burden of showing that there was no racial discrimination in the selection of the prospective veniremen, in the event no blacks are selected as prospective jurors or only a token number consistently appear on the panel.
Of course, this problem would be completely erased if Dade County would use its electronic data processing equipment in *161 the random jury selection process. See Report of Judicial Council of Florida (17th Report, 1972), p. 32.
We turn to the second question, which is answered in the affirmative. The Twenty-Sixth Amendment to the United States Constitution provides that the right of citizens eighteen years of age or over to vote shall not be denied or abridged by the United States or by any state on account of age. This amendment has no bearing on eligibility of persons for jury service.
Fla. Stat. § 40.01(1), F.S.A., provides that jurors shall be taken from the male and female persons over the age of twenty-one years, who are citizens of the State and who have resided in the State for one year and in their respective counties for six months, and who are fully qualified electors of their respective county. Since the Twenty-Sixth Amendment to the United States Constitution says nothing about jury service, the State is free to require that jurors be over twenty-one years of age, as each state has the power to establish the qualifications for jurors to serve in its courts. 47 Am.Jur.2d, Jury, § 96, p. 707.
The following appears in 47 Am.Jur.2d, Jury, § 102, p. 711:
"The right to vote and the privilege and qualification to serve as a juror are not correlative or necessarily coexistent. Thus, while electors and jurors may have some requirements in common, a person may be a qualified elector and yet not be a qualified juror, and vice versa."
50 C.J.S. Juries § 134, pp. 861-862, contains the following:
"In the absence of any constitutional provision on the subject, and as long as the essential requisites of trial by jury are preserved, the qualifications of jurors are matters of legislative control, and, in the exercise of its control, the legislature may restrict, abridge, deny or enlarge the right and duty of jury service."
In Hall v. State, 136 Fla. 644, 187 So. 392 (1939), a female defendant attacked the competency of the jury panel because only the names of male persons had been selected. In rejecting the defendant's contentions, this Court said:
"In Strauder v. West Virginia, 100 U.S. 303, 310, 25 L.Ed. 664, the Supreme Court of the United States, in discussing the Fourteenth Amendment, said: `We do not say that, within the limits from which it is not excluded by the Amendment, a State may not prescribe the qualifications of its jurors, and in so doing make discriminations. It may confine the selection to males, to freeholders, to citizens, to persons within certain ages, or to persons having educational qualifications. We do not believe the 14th Amendment was ever intended to prohibit this. Looking at its history, it is clear it had no such purpose. Its aim was against discrimination because of race or color. As we have said more than once, its design was to protect an emancipated race, and to strike down all possible legal discriminations against those who belong to it.'" (p. 400)
The Nineteenth Amendment to the United States Constitution conferred upon women the right to vote, just as the recently adopted amendment confers that right on persons eighteen years old or older. When the Nineteenth Amendment was adopted, the statutes of Florida limited jury service to males only. In Hall v. State, supra, this Court rejected the idea that the Nineteenth Amendment invalidated the statutory prescription that only males were eligible for jury service, saying:
"Current discussion touching the adoption of the Nineteenth Amendment related exclusively to the franchise. The words of that amendment by express *162 terms dealt solely with prohibiting any denial or abridgment of the right to vote based upon sex.
"......
"It follows that Sections 4443 and 4444, Compiled General Laws of Florida, 1927, derived from an act adopted in 1893, which impose jury duty upon male citizens only, remain as valid statutes now as they were before the Nineteenth Amendment to the Federal Constitution was adopted. The legislature still has the power to prescribe the qualifications of jurors, and to impose this burden upon men alone if it sees fit so to do." (p. 401)
In Carter v. Jury Commission of Greene County, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed. 549 (1970), quoted extensively in our discussion of the third question, the Court recognized the right of the State to confine the jury selection to citizens, to persons meeting specified qualifications of age and educational attainment, and to those possessing good intelligence, sound judgment, and fair character. See also Hoyt v. Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961).
We now consider the third question, which must be answered in the negative. The statute under attack reads as follows:
"Fla. Stat. § 40.01(3), F.S.A.
"In the selection of jury lists only such persons as the selecting officers know, or have reason to believe, are law abiding citizens of approved integrity, good character, sound judgment and intelligence, and who are not physically or mentally infirm, shall be selected for jury duty."
In Carter v. Jury Commission of Greene County, supra, the Court considered an Alabama statute quite similar to the Florida statute now under attack. The Alabama jury commission was charged with the duty of selecting prospective veniremen and preparing a jury roll and jury box containing the names of all qualified, nonexempt citizens in the county who are "generally reputed to be honest and intelligent and are esteemed in the community for their integrity, good character and sound judgment." This particular statute was Ala. Code, Tit. 30, § 21. In sustaining the statute, the Court said:
"Specifically, the charge is that § 21 leaves the commissioners free to give effect to their belief that Negroes are generally inferior to white people and so less likely to measure up to the statutory requirements; to the commissioners' fear that white people in the community will suffer if Negroes are accorded the opportunity to exercise the power of their majority; and to the commissioners' preference for Negroes who tend not to assert their right to legal and social equality. The appellants say the injunctive relief granted by the District Court is inadequate, because the history of jury selection in Greene County demonstrates a practice of discrimination persisting despite the federal court's prior grant of declaratory relief. Moreover, so long as § 21 remains the law, it is argued, Negro citizens throughout Alabama will be obliged to attack the jury-selection process on a county-by-county basis, thereby imposing a heavy burden on already congested court dockets and delaying the day that Alabama will be free of discriminatory jury selection.
"While there is force in what the appellants say, we cannot agree that § 21 is irredeemably invalid on its face. It has long been accepted that the Constitution does not forbid the States to prescribe relevant qualifications for their jurors. The States remain free to confine the selection to citizens, to persons meeting specified qualifications of age and educational attainment, and to those possessing good intelligence, sound judgment, and fair character. `Our duty to protect the federal constitutional rights of all does not mean we must or should impose on states our conception of the proper source of jury lists, so long as the source *163 reasonably reflects a cross-section of the population suitable in character and intelligence for that civic duty.'
"Statutory provisions such as those found in § 21 are not peculiar to Alabama, or to any particular region of the country. Nearly every State requires that its jurors be citizens of the United States, residents of the locality, of a specified minimum age, and able to understand English. Many of the States require that jurors be of `good character' or the like; some, that they be `intelligent' or `well informed.'
"Provisions of similar breadth have been challenged here and sustained before. In Franklin v. South Carolina [218 U.S. 161, 30 S.Ct. 640, 54 L.Ed. 980], the Court rejected a similar attack upon a jury-selection statute alleged by the plaintiff in error to have conferred arbitrary power upon the jury commissioners. The pertinent law there provided that the commissioners should `prepare a list of such qualified electors under the provisions of the constitution, between the ages of twenty-one and sixty-five years, and of good moral character, of their respective counties as they may deem otherwise well qualified to serve as jurors, being persons of sound judgment and free from all legal exceptions, which list shall include not less than one from every three of such qualified electors... .' In upholding the validity of these standards, the Court said:
"`We do not think there is anything in this provision of the statute having the effect to deny rights secured by the Federal Constitution... . There is nothing in this statute which discriminates against individuals on account of race or color or previous condition, or which subjects such persons to any other or different treatment than other electors who may be qualified to serve as jurors. The statute simply provides for an exercise of judgment in attempting to secure competent jurors of proper qualifications.'
"Again, in Smith v. Texas, we dealt with a statute leaving a wide range of choice to the commissioners. Yet we expressly upheld the validity of the law. The statutory scheme was not in itself unfair; it was `capable of being carried out with no racial discrimination whatsoever.'
"No less can be said of the statutory standards attacked in the present case." (Text pp. 331-335, 90 S.Ct. p. 524).
Carter v. Jury Commission of Greene County, supra, is dispositive of this question. We hold that Fla. Stat. § 40.01(3), F.S.A., is constitutional and is neither vague nor an unlawful delegation of authority to the jury commissioners.
We summarize as follows:
The Supreme Court of the United States has mandated that proportional limitation in the selection of prospective jurors is not permissible and we must follow this mandate in declaring the selection procedure of the Dade County Jury Commission improper and illegal. In other words, prospective jurors must be selected at random by the proper selecting officials without systematic and intentional exclusion of any economic, social, religious, racial, political, or geographical group. While selection from classes or groups on the basis of proportional representation may guarantee representation to each group, at the same time it imposes a limitation on the number from each class or group.
If a prospective juror is labeled as being black or white in the jury selection index cards, there may arise a presumption of racial discrimination in the event no blacks are selected or only a token number consistently appear on the panel. The use of electronic data processing equipment in the random jury selection would completely eliminate this problem.
*164 Also, jury service is limited to those twenty-one years of age or older, as the Twenty-Sixth Amendment of the United States Constitution only granted voting rights to those eighteen years of age or older. This did not affect the right of the State to prescribe qualifications for State jurors, and limit jury service to those twenty-one years of age or older.
Fla. Stat. § 40.01(3), F.S.A., is constitutional. After the random selection of jury lists the selecting officers should list for jury service only such persons as they know, and have reason to believe, are law-abiding citizens of approved integrity, good character, sound judgment, and intelligence.
The decision invalidating the present Dade County jury panel gives no relief to those who have gone to trial without questioning the selection of the jurors by an appropriate challenge to the panel.
We suggest that the Legislature and this Court collaborate in a speedy effort to establish appropriate guidelines by statute and rules of this Court for the selection of prospective jurors. Dedicated citizens serving as jury commissioners and county commissioners, burdened with the responsibility of selecting the prospective jurors, should not be charged with the further responsibility of reading and digesting the many court decisions delineating the constitutional requirements.
For the reasons above stated, the certified questions are answered as follows:
The first question is answered in the affirmative.
The second question is answered in the affirmative.
The third question is answered in the negative.
It is so ordered.
ROBERTS, C.J., and CARLTON, McCAIN and BOYD, JJ., concur.
ERVIN, J., concurs in part and dissents in part with opinion.
DEKLE, J., dissents in part and concurs in part with opinion.
ERVIN, Justice (concurring in part and dissenting in part):
I concur in all of the excellent opinion of Justice Adkins insofar as he holds no discrimination may be effected against minorities or particular groups by proportional selection of prospective jurors. See my dissenting opinion in State v. Demetree, (Fla.) 213 So.2d 709, 713. However, I have grave doubts and dissent insofar as the opinion indicates state restrictions can be provided insofar as the age of jurors is concerned who have reached legal majority.
DEKLE, Justice (dissenting in part and concurring in part):
I respectfully dissent as to question one. An improved more equally balanced jury venire is a strange basis for its disqualification. We lose our perspective in our eager efforts for equality.
I concur in the remainder of the able opinion.