300 So.2d 743 (1974)
James M. MAHONEY, Appellant,
v.
STATE of Florida, Appellee.
No. T-393.
District Court of Appeal of Florida, First District.
September 5, 1974.
Rehearing Denied October 11, 1974.
*744 Norman J. Abood, Jacksonville, for appellant.
Robert L. Shevin, Atty. Gen., and Raymond L. Marky, Asst. Atty. Gen., for appellee.
BOYER, Judge.
Defendant in the trial court here appeals judgment of guilt and the resulting sentence entered on his plea of nolo contendere, presenting for our review two issues: First, did the trial judge err in denying defendant's motion to suppress evidence and secondly was the jury selection system employed in Duval County at the time of the trial herein violative of constitutional standards.
Although other errors were assigned, they were not argued in appellant's briefs and are therefore deemed abandoned. (Rule 3.7, subd. i, Florida Appellate Rules; Mitchell v. Mason, Sup.Ct.Fla. 1911, 61 Fla. 692, 55 So. 387) The errors so assigned and abandoned do not raise jurisdictional nor fundamental considerations and are therefore not considered. We accordingly confine our opinion to the issues presented and argued in the briefs.
The pertinent facts commenced with Sergeant Barrow of the Jacksonville Police Department receiving a message from a fellow officer Taylor regarding a long distance phone call which had been received by Taylor from a federal agent in Dallas, Texas, stating that he had information from an informant that one Bicking was leaving Texas with a large quantity of marijuana destined for Jacksonville. The federal agent gave Taylor a description of Bicking and his automobile. Upon Taylor relaying the information to Barrow the latter issued a BOLO (be on the look out) for Bicking and his car. Two days later at approximately 1:30 in the morning Sergeant Barrow received a call from Patrolman Merritt advising that he had seen the vehicle described in the BOLO, a 1971 Pontiac license tag KENNY-2, at a Holiday Inn Motel. Sergeant Barrow went to the motel and through inquiries at the desk learned that Bicking was registered in room 265. Barrow and a fellow officer Merritt took up surveillance of the room for approximately 20 or 25 minutes at which time Barrow decided to call for assistance, asking Merritt to stay on the scene. Barrow then went to the Vice Squad office where he telephoned two other investigators (Locke and Miller). He also called an assistant state attorney seeking legal advice regarding a search warrant. The assistant informed Barrow that he did not have enough probable cause to obtain a warrant but that he, Barrow, should maintain his surveillance and keep in contact. Sergeant Barrow thereupon returned to the motel at approximately 2:30 a.m., followed by Officers Locke and Miller. Locke and Miller stationed themselves in the patio area around the pool where they could observe the room from a distance of approximately 75 feet. At 3:15 a.m. another car pulled up in front of room 265 and two men got out of that car, went to the room, knocked on the door and were admitted. Approximately ten minutes later those men exited from the room, went to the car and removed a box from the trunk, taking it into the room. At that time a fourth person came to the door. The last mentioned car was then parked and all four men went into the room and shut the door. Officers Locke and Miller testified that during the time the door was open they observed, through binoculars, a bag on the bed in the room and that what appeared to be a grassy substance spilled onto the bed from the bag. Miller stated that he also observed two "bricks" wrapped in brown paper. He further testified that from his experience he felt certain that the grassy substance *745 was loose marijuana and that the "bricks" were compressed kilos of marijuana. Both Barrow and Locke testified that one of the four men was generally known to them to be involved in the sale of marijuana as a "pound dealer". At approximately 4:45 a.m. defendant Mahoney left the motel room and walked toward a Buick automobile. He opened the trunk and placed a plastic bag in it and then stood momentarily with the trunk lid open. At approximately the same time Sergeant Barrow had decided to again call the assistant state attorney, but upon seeing Mahoney come out of the room with the plastic bag he and the other officers concluded that he (Mahoney) was about to leave and they felt that although they then had sufficient probable cause to sustain a search warrant they did not have time to secure same. Officers Locke, Miller and Barrow then drove up in an unmarked police car and called "Police! Stop!" Mahoney slammed the trunk lid closed and headed toward the motel room, taking five or six steps and then stopped. Officer Locke observed Mahoney drop the car keys to the ground. Mahoney was then advised by the officers that they had reason to believe that he had drugs in his vehicle and that they were going to search the trunk. The keys were retrieved, the trunk opened and a plastic bag containing marijuana was found therein. Mahoney was then formally arrested. The officers inquired of Mahoney if the other occupants were armed and were advised that there was a weapon in the room. The officers then instructed Mahoney to knock on the door and request admittance. He did so and when the door was opened the officers entered the room and placed the occupants under arrest. The officers testified that marijuana was found scattered on the bed and in boxes throughout the motel room and capsule drugs were found in Bicking's shaving kit.
The trial judge denied a motion to suppress the evidence whereupon Mahoney voluntarily and freely entered a plea of nolo contendere, reserving the right to appeal the results of the suppression hearing.
Did the trial judge err in denying the defendant's motion to suppress the evidence? We think not.
Initially we should note that appellant does not question the trial judge's finding that probable cause existed.
Appellant relies heavily upon Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) contending that the warrantless search of the trunk of his vehicle and subsequent seizure was illegal and violative of his federal and state constitutional rights prohibiting unreasonable searches and seizures. We find his reliance thereon misplaced. In Coolidge the Supreme Court held that a search or seizure carried out on a suspect's premises without a warrant is per se unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of "exigent circumstances." In the case sub judice the search in question did not involve appellant's premises. Even if it had, exigent circumstances existed which would authorize a warrantless search and seizure. (United States v. Doyle (5th Cir.1972), 456 F.2d 1246) In the Doyle case the court upheld a search of a dwelling and a garage, stating:
"In our judgment the record amply supports the conclusion that the search was incident to a valid arrest. The officers observed the crime of illegal possession of drugs being committed in their presence. In addition, they had been fully informed of the criminal activities of Doyle, including his possession of prohibited drugs on the very night of the seizure. The information furnished by the informant had proved to be remarkably correct and accurate after thorough checking and investigation and according to the actual observations of the officers. There was strong reason to believe that Doyle was about to make his *746 departure during the darkness of night. Any substantial delay at this very critical time of the night under existing exigent circumstances would have very likely resulted in the destruction of evidence and the departure of Doyle. Considering the totality of the circumstances, we believe the search and seizure was reasonable and proper. The officers were clearly justified in searching the very place where they knew the drugs were located  the garage. It would be wholly unreasonable to say under the facts presented in this case that the officers should have abandoned known contraband to go and seek a warrant." (456 F.2d at page 1248; Emphasis added)
In Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) the officers, after arresting the defendant for robbery, removed the automobile to the police station and conducted a thorough search. Evidence was found in the glove compartment which was introduced against the defendant at trial. The defendant claimed, as does the appellant sub judice, that the search and seizure was illegal because of the absence of a warrant. The Supreme Court of the United States, on appeal from an order affirming a denial of a writ of habeas corpus, said:
"In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the Court has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution. As a general rule, it has also required the judgment of a magistrate on the probable-cause issue and the issuance of a warrant before a search is made. Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search. Carroll, Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543] supra, holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible.
"Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the `lesser' intrusion is permissible until the magistrate authorizes the `greater.' But which is the `greater' and which the `lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

"On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained. The same consequences may not follow where there is unforeseeable cause to search a house. Compare Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409. But as Carroll, supra, held, for the purposes of the Fourth Amendment there is a constitutional difference between houses and cars." (399 U.S. at pages 51 and 52, 90 S.Ct. at page 1981; Emphasis added)
*747 In Sessions v. State, Fla.App. 1st 1968, 213 So.2d 614, this Court held that a search of an unoccupied automobile which the defendants had driven to the police station and parked outside while they went in and were arrested for robbery was reasonable under the circumstances, distinguishing Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964) which was there relied upon by the appellants saying:
"In its brief in the present appeal the State distinguishes the Preston case from the case at bar in that in Preston the search was made for evidence of a crime which the police did not yet know the defendants had committed, and so the search was purely exploratory in nature while in the instant case the sergeant had reasonable grounds to believe that a serious felony  robbery  had been committed by the defendants, and searched the automobile as an incident to the arrest.
"The State further points out in its brief that the U.S. Supreme Court in the later case of Cooper v. State of California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), thus clarified its holding in the Preston case, supra:
`We made it clear in Preston that whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case and pointed out, in particular, that searches of cars that are constantly movable may make the search of a car without a warrant a reasonable one although the result might be the opposite in a search of a home, a store, or other fixed piece of property.'
"Applying the rule, as just clarified in the Cooper case, to the facts and circumstances of the case at bar, we think that the search was a reasonable one and not in violation of constitutional safeguards, and we hold that the trial court properly admitted into evidence, and permitted testimony concerning, the items found by the police in the defendants' automobile." (213 So.2d at page 615)
Other cases supporting the State in the case sub judice are State v. Browning, Fla.App.2d 1970, 233 So.2d 866 and Donar v. State, Fla.App. 1st 1970, 236 So.2d 145.
We next consider appellant's attack upon the jury selection system employed by Duval County. This point was specifically reserved by appellant's counsel before entering the plea of nolo contendere. The reservation was stipulated to by the assistant state attorney and accepted by the court.
It is appellant's contention that the jury selection process utilized by Duval County violated the principles announced in State v. Silva, Sup.Ct.Fla. 1972, 259 So.2d 153 because the process "arbitrarily" discriminated by inclusion or exclusion of black persons.
The system used to select the venire was explained by the Clerk of the Circuit Court who testified that, as clerk, he was also secretary to the Jury Commission and performed the actual labor involved incident to selection of the venire. He testified that the Jury Commission is furnished with a "master list" (a computer list) which includes all registered voters eligible for jury service. He then explained as follows:
"A. The Jury Commission also tells how many names they would like to have pulled from the master and, as a result of that number, depending on the total number, a percentage would be determined that would be necessary to pull that many names.
"In other words, if they tell us they want fifteen thousand or twenty thousand, then that percentage of the total number of registered voters, it would be the computer, would be set to pull that percentage, whatever it may be if it developed that it was seven percent, four percent, three percent, or whatever it might be, the computer would be set to *748 pull those names, that percentage of names per precinct by precinct so you would get the same percentage of people from the smaller precinct as well as the large precinct.
"This is done without any regard to sex, color or status or anything else of the registered voter.
"Q. Well, why is it done on precinct by precinct basis, then?
"A. So that you get an equal percentage of people spread out over the entire county. You won't get your total or you won't get the bulk of your total from one precinct of the county, so to speak.
"Q. Doing it this way, do you know whether or not you had the proportionate number of representative blacks and whites on a jury that would be the same within the community?
* * * * * *
"A. The percentage, we have no way of determining when you have that percentage, you have no way of knowing whether you are getting male, female, black or white... ."
We have carefully considered State v. Silva, supra, and find that the procedures there condemned do not appear in the method employed in Duval County, from whence the present appeal is taken. In the Silva case a carefully prepared quota system was employed and certain groups and persons of certain occupations were automatically excluded from the master list for prospective jurors. Such are not the facts sub judice. Indeed we can hardly conceive of a fairer or more acceptable method of venire selection than that described. (See also Reed v. State, Sup.Ct. Fla. 1974, 292 So.2d 7)
Appellant for the first time in his reply brief raises a new issue and urges our consideration of a recent decision of this Court which had its genesis in the identical factual setting, Bicking v. State, Fla.App. 1st 1974, 293 So.2d 385. However, the issue resolved by that appeal was not raised sub judice.
Affirmed.
RAWLS, C.J., and McCORD, J., concur.