RAWLS, Acting Chief Judge.
Appellant Winters appeals a judgment of guilty entered pursuant to a plea of nolo contendere with reservation of right to appeal. The issue posed challenges the trial court’s order denying appellant’s motion to suppress evidence obtained from a search of his dwelling without a valid search warrant.
Late in the year 1972 or early in 1973, someone erected a mailbox on State Road 319 on a rural route in Wakulla County serviced by the Crawfordville Post Office. The mailbox bore the name of J. W. Williams and was assigned number 30 by the rural mail carrier. The mail carrier had never seen any person by the name of J. W. Williams. In February, 1973, a letter containing cocaine, which was mailed from the South American country of Colombia and addressed to J. W. Williams at his rural post office box in Wakulla County, was intercepted by the U. S. Bureau of Customs in Miami.[1] A customs officer, along with several Florida Department of Criminal Law Enforcement (FDCLE) officers, attempted to make a controlled delivery of the intercepted letter to the J. W. Williams mailbox. The letter was refused. During the year 1973, several other letters containing cocaine, which were addressed to J. W. Williams, were intercepted by customs; however, a controlled delivery of these letters was not attempted as customs was undergoing a reorganization.
In January of 1974, the letter which gives rise to this controversy was intercepted by the customs office' in Miami. The letter, which contained cocaine, was from Bogota, Colombia, and was addressed *47 to the J. W. Williams address in Wakulla County. FDCLE officers arranged a controlled delivery of this letter to the J. W. Williams mailbox. In preparation for the delivery, Special Agent Frederick arranged for the rural mail carrier to deliver some junk mail to the Williams mailbox. In maintaining surveillance of the mailbox area, Frederick observed a man remove the mail from the Williams mailbox and from a mailbox adjacent thereto which bore the name of Winters. The man then walked down a dirt road which led to a frame house and house trailer. As a result of these observations, a search warrant authorizing the search of the frame house and house trailer was obtained. On the morning of January 24, 1974, Agent Frederick rode with mailman Russ and delivered the intercepted letter containing cocaine to the Williams mailbox. Agent Layman was positioned across the road where he could observe the Williams mailbox and surrounding area. At some distance from the Williams mailbox, Agent Frederick departed the mailman’s company and joined Agent Layman in the surveillance of the Williams mailbox. The surveillance lasted from 10:00 a. m. until 7:00 p. m. At the latter time, the sur-veilling agents observed a person identified as Winters remove mail from the Williams and Winters mailboxes and proceed along the dirt road which led to the frame house and house trailer. The two agents were unable to observe from their position whether Winters entered the frame house or the house trailer. As it was getting dark, the agents radioed the Wakulla County Sheriff’s office and asked that deputy sheriffs be sent to assist in serving the search warrant. In response, two deputies arrived. At this time, the officers observed a car departing the dirt road. Agent Frederick and a deputy sheriff stopped the car and searched same, as they suspected the cocaine might be in the driver’s possession. A large quantity of marijuana was found in the car. At this juncture, the driver of the car, William Parramore, leaned over the steering wheel and commenced blowing the horn and yelling that a raid was in progress. Agent Layman ran to the door of the frame house and announced, “Police with a search warrant.” The door of the house was opened by appellant Winters, and Agent Layman entered the house. Layman observed a female occupant of the house flee with something in her hand from the living room to the kitchen. Layman pursued the woman, later identified as Mrs. Parramore (wife of the horn blowing driver of the automobile), and took from her a “baggie” of marijuana and a pipe. Agents Frederick and Layman proceeded to search the living room and kitchen. They found the “controlled” letter which had been opened and from which part of the cocaine had been removed. Marijuana and other illegal drugs were also found.
The Parramores and appellant Winters were arrested and subsequently charged by information with: 1) possession of more than five grams of cannabis sativa, 2) possession of cocaine, and 3) possession of paraphernalia to be used for unlawfully administering a controlled substance. Upon timely motions to suppress evidence and search warrant, the trial court entered its order finding the affidavit upon which the search warrant was predicated to be insufficient and suppressing the evidence procured through the service of the defective search warrant. In its order suppressing the evidence, the trial court specifically stated: “The Court does not decide any question as to whether the officers conducting the search had probable cause to believe that a felony was being committed in their presence and the Court therefore defers any ruling on such question.” Thereafter, appellant moved to suppress the evidence which had been seized in the residence. After conducting an extensive hearing the trial court denied that motion to suppress. Appellant entered his plea of nolo contendere to Count II (possession of cocaine), reserving his right to appeal *48 the trial court’s denial of the second motion to suppress, and the state nolle prossed the other two counts.
The judgment of conviction of possession of cocaine must stand or fall upon the admissibility of the evidence seized as a result of the residential search. Appellant argues that no probable cause existed for the arrest of appellant Winters. “Exigent circumstances” is the label to be applied in determining probable cause to sanitise a warrantless search. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). The following summarizes the facts: 1) Winters was observed removing the intercepted letter containing cocaine from the J. W. Williams mailbox; 2) the officers saw Winters walk up the dirt road into the vicinity of the frame dwelling; and 3) Winters’ cohort was heard yelling, “It’s a raid. It’s a raid.”, while blowing his automobile’s horn. In our judgment, the record amply supports the conclusion that the officers observed Winters commit the crime of illegally possessing cocaine and that the ensuing search was legally justified. There was strong reason to believe that Winters and the other occupants of the dwelling were about to destroy the cocaine which the officers had every reason to believe was in Winters’ possession. United States v. Doyle, 456 F.2d 1246 (5th Cir. 1972); and Mahoney v. State, 300 So.2d 743 (1 Fla.App.1974).
Appellant insists that Melton v. State, 75 So.2d 291 (Fla.1954), controls. We do not agree. In Melton, the arresting officer went to the residence solely for the purpose of serving a search warrant. Here, the arresting officers embarked upon a two-fold mission; that is, to serve the search warrant and to arrest Winters, who shortly before had been observed committing a crime in the officers’ presence.
The judgment of conviction is AFFIRMED.
MILLS and SMITH, JJ., concur.

. A customs official directed the Crawfordville Postmaster to keep a log on all mail addressed to J. W. Williams and not to deliver any letters from a foreign address to the Williams mailbox except after first notifying customs.