ROBERTS, Justice.
This is an appeal from an order of the Criminal Court of Record of Dade County quashing an indictment and information entered against the appellee on the ground, inter alia, that the indicting Grand Jury was constituted in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution. Jurisdiction of the appeal attaches under Section 4, Article V, of the Florida Constitution, F.S.A.
The appellee was charged by indictment of the Grand Jury of Dade County (and by an information filed by the State Attorney on the basis of the evidence taken by the Grand Jury) with the offense of operating a building for the purpose of prostitution. The appellee filed a motion to quash the indictment and information. Following a hearing on such motion and the taking of testimony, the order brought here for review was entered.
In the lowr court, and here, the appellee made a two-pronged attack on the Dade County Grand Jury sitting in April of 1966, his contention being that in selecting prospective grand jurors the Jury Commissioners of Dade County (1) failed to comply with “the mandatory statutory provisions prescribing the qualifications of grand jurors,” and (2) failed to “follow any system calculated to produce a fair cross-section of the community,” contrary to the Fourteenth Amendment to the U.S. Constitution.
The statute providing for the selection of grand jurors in Dade County, Ch. 57-550, Laws of Florida, Acts of 1957, creates a Grand Jury Commission composed of ten members, five of whom are selected by the Governor from different county commissioner districts in Dade County, and five of whom are the principal county officials of the county. The statute contemplates a Grand Jury list of 500 names. It prescribes the usual qualifications on the part of the grand jurors — U.S. citizen, qualified elector and resident of Dade County, of sound mind and body and good moral character, no convictions of felonies or misdemeanors involving moral turpitude, not a member of a subversive organization, intelligent, well-informed and able to read and write English— and exempts from grand jury duty certain *711 professional persons and public officers or employees. It expressly provided that
“In preparing a list of names of prospective grand jurors, as provided by this act, the Grand Jury Commission shall make such investigation as it may deem necessary to determine the qualifications and moral fitness of persons to serve upon the Grand Jury.” (Emphasis added.)
It is conceded that, in preparing the 1966 Grand Jury list, the Grand Jury Commission did not, as a body, personally examine or conduct an independent investigation of each prospective juror prior to placing his or her name on the Grand Jury list. What is important, however, is that each and every person placed on the list was personally known to, and his or her name was submitted by, one of the Grand Jury Commissioners ; and the full Commission, as a body, did go over the entire list of names submitted by the several Commissioners, for approval or disapproval, prior to placing each name on the list. The persons so named were also checked by the Commission, from records immediately available to one or the other of its public-official members, as to their residence, citizenship and voting status, the absence of a criminal record, and their previous service on a Dade County Grand Jury. As to the other qualifications prescribed by the statute, the full Commission relied upon the personal knowledge and acquaintanceship of the individual Jury Commissioners in making the recommendation. We think that this procedure was entirely adequate to support a conclusion by the Commissioners that each person placed on the grand jury list was, prima facie, qualified in all respects to serve. Cf. Beatrice Foods Company v. United States, C.A. 8 1963, 312 F.2d 29; Chance v. United States, C.A. 5 1963, 322 F.2d 201, 206.
Supplementing this procedure, the statute provides for an examination of the prospective jurors, under oath, by the impanelling circuit judge (Ch. 57-551, Laws of Florida, Acts of 1957), at which time they are personally examined and required to answer under oath as to each statutory qualification. The trial judge was of the opinion that a juror’s answers to the circuit judge’s questions were nothing more than a “self-serving evaluation” of himself, and entitled to no credence. It is pointed out, on behalf of the State, that it is unlikely that a person would be willing to perjure himself in order to spend a full six months of his time serving upon a grand jury — and this certaintly appears to be a fair assumption. Whether, in other circumstances, such an examination of prospective grand jurors would be considered adequate is a question which we do not decide, since it is not presented. Here, a Grand Jury Commission, composed of responsible and impartial citizens who are public officials and leading business and professional men in the community, has selected for Grand Jury duty only those persons with whom one or more of the members of the Commission are personally acquainted, and each person selected for Grand Jury service was personally interrogated, under oath, by the impanelling Circuit Judge as to his qualifications; and we think that such a procedure was entirely adequate to insure that only qualified persons would sit on the Grand Jury and that it fully complied with the statutory direction to “Make such investigation as it may deem necessary to determine the qualifications and moral fitness of persons to serve upon the Grand Jury.” Ch. 57-550, supra. Accordingly, it must be held that, in ruling to the contrary, the trial judge was in error.
The trial judge also found that the Grand Jury Commissioners
“ * * * had no systematic method of selecting prospective Grand Jurors representative of the community’s human resources which included persons from, racial, laboring, economic, geographical and educational groups. The failure to develop and use such a system results in a failure of a fair cross-section of the community being nominated for Grand Jury service.”
And he held that “equal protection” under the Fourteenth Amendment of the federal *712 constitution required that an indictment be returned by a Grand Jury whose members are “impartially drawn from a cross-section of the community.”
Conceding that a Grand Jury should represent a fair cross-section of the community, it does not necessarily follow that the Grand Jury Commissioners were required to compile figures on and select a proportionate number of prospective grand jurors from each and every group referred to above. It was affirmatively shown by the evidence that no attempt was made specifically to exclude any of those groups; and the record shows, also, that the Grand Jury which returned the indictment against the appellee did, in fact, represent a fair cross-section of the community. The situation here is similar to that with which the federal court was concerned in United States v. Hoffa, N.D.Fla.1963, 205 F.Supp.711. There, the same attack was made on the system of employing “suggestors or key men” for the purpose of obtaining names of prospective jurors. In holding that this system was not susceptible to the attack, the federal court said:
“The list introduced in evidence (being the list of names selected) which contains the occupation of all the jurors whose names were placed in the box under challenge, clearly refutes the contention that the method employed by the court officials did work a systematic exclusion of the groups named and did not produce a fair cross-section of the community. A party does not have a vested right to any particular method of selecting a jury. Neither statutory nor case made law requires the use of any particular source of names so long as there is no systematic exclusion of any group of citizens who are otherwise eligible to serve as jurors in the Federal Court. * * * While the defendants are entitled to an impartial jury drawn from a cross-section of the community, this does not mean that every jury must contain representatives of all social, economic, religious, racial, political and geographic groups of the community. * * * Nor is there a constitutional requirement that a given number of each group shall be included and that said number must at least represent the percentage of said group which equals the percentage of said group to all persons eligible to serve. * * * It is clear that the burden is on the defendants to show that the methods used were not reasonably designed to produce a fair cross-section of the community.”
Here, the appellee adduced no evidence whatsoever as to the composition of the Grand Jury list from which the names were drawn to serve on the Grand Jury which returned the indictment against him. And it is the composition of the Grand Jury list, and not the particular Grand Jury which returns the indictment, which determines whether “equal protection” has been denied. As stated by Mr. Justice Frankfurter in Cassell v. State of Texas, 339 U.S. 282 at page 291, 70 S.Ct. 629 at page 633, 94 L.Ed. 839:
“Assuming that the grand-jury pool fairly enough reflects the racial composition of the community, there is no basis for a claim of constitutional discrimination if without design it comes to pass that a particular grand jury has no representation of a particular race.”
And in Swain v. State of Alabama, 1964, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759, in speaking of a claimed denial of equal protection, the high court said:
“Neither the jury roll nor the venire need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group.”
As a matter of fact, as noted above, the Grand Jury which returned the indictment against the appellee did represent a fair cross-section of the community. There were two housewives, two retired persons, *713 a travel agency officer, three insurance men, an airlines employee, an electrician, a dairy owner, one bank employee, a department store executive, two hotelmen, an accountant, a real estate appraiser, a stock broker, a real estate broker and a teacher. The geographical representation shows that they came from Miami, Coral Gables, Miami Beach, Opa Locka and Miami Shores. Of the remainder of the list of 85 chosen by lot from the master Grand Jury list, there were persons from Homestead, Perrine, Miami Springs, Hialeah and every other part of the county. Thus, the statement by the trial judge, quoted above, that
“The failure to develop and use such a system results in a failure of a fair cross-section of the community being nominated for Grand Jury service”
finds no basis whatsoever in the record as to the master Grand Jury list from which prospective jurors are chosen, by lot, to serve on a particular Grand Jury; and is contrary to the evidence appearing in the record as to the composition of the Grand Jury which returned the indictment against the appellee, as recounted above.
The appellee also contends that it was error to place on the master Grand Jury list a certain percentage of women and negroes, citing Brooks v. Beto, C.A. 5 1966, 366 F.2d 1, and Rabinowitz v. United States, C.A. 5 1966, 366 F.2d 34. The appellee’s confidence in these decisions is misplaced. In Brooks the Fifth Circuit Court of Appeals specifically overruled Collins v. Walker, C.A. 5 1964, 329 F.2d 100, which had held that the purposeful inclusion of negroes on the grand jury list was unlawful discrimination against a negro accused. And in Rabinowitz it was held that the purposeful inclusion of only a token number of negroes (out of 557 new names added to the list, only four, or .07 percent, were negroes) on the grand jury list amounted to unlawful discrimination, even though there were, in fact, five ne-groes on the grand jury panel which returned the indictment. In so holding it was pointed out that
“The focus of the law is on the list from which the jury is drawn and not on the composition of a particular jury or grand jury.”
It is well settled that the burden is on the accused to plead and prove, with the greatest accuracy and precision, the irregularities in the selection of grand jurors which are claimed to have vitiated an indictment. See Ford v. State, 1902, 44 Fla. 421, 33 So. 301. Here, there is no allegation or suggestion that any of the grand jurors who returned the indictment against the appellee were not in fact duly qualified to serve as such. There is no allegation that the master Grand Jury list, from which their names were drawn by lot, contained any unqualified jurors, nor is there any evidence whatsoever that such master list did not fairly represent a cross-section of the community. It was shown that the grand jurors who actually served did, in fact, fairly represent a cross-section of the community. The responsible persons in the selection of a jury list must be given a wide discretion in the performance of their duty, and their work-product should be overturned only where there has been a flagrant abuse of such discretion by them.
Accordingly, the decision under review is reversed and remanded for further proceedings not inconsistent with this opinion.
It is so ordered.
CALDWELL, C. J., and THOMAS, DREW, THORNAL and ADAMS, JJ., concur.
ERVIN, J., dissents with Opinion.