286 So.2d 532 (1973)
Julius SEAY, Jr., Appellant,
v.
STATE of Florida, Appellee.
George SILVA, Appellant,
v.
State of Florida, Appellee.
Nos. 43074, 43075.
Supreme Court of Florida.
November 1, 1973.
Rehearings Denied January 11, 1974.
*534 Morton A. Orbach, So. Miami, for appellant Julius Seay; and Joel Hirschhorn, Miami, for appellant George Silva.
Robert L. Shevin, Atty. Gen., and William L. Rogers, Asst. Atty. Gen., for appellee.
DEKLE, Justice.
Consolidated for review are these two causes before us on direct appeals, transferred from the Third District Court of Appeal as passing upon the constitutionality of Fla.Laws Chs. 57-550 and 70-1000[1] relating to grand jury selection and composition in the larger counties of the state having a population of 450,000 or more. It is the selection of the grand jury which returned indictments against each of the defendants which is challenged. Seay was indicted and in a trial by jury was found guilty of Murder I and sentenced to life imprisonment for shooting and killing a security guard during a holdup of an Army-Navy Store in Miami.
Silva has previously appeared before this Court on earlier indictments by the grand jury charging this defendant with the forcible rape of two women. In the earlier appearance in State v. Silva, 259 So.2d 153 (Fla. 1972), we held the petit jury venire as selected and constituted in Dade County at that time, to be constitutionally invalid, in that the selection of the list was on a so-called "quota-system", that is, it included a fixed percentage of 15% to 19% of qualified black citizens in Dade County who were registered voters. We stated that such proportional ratio selection had been forbidden by the U.S. Supreme Court and that we "reluctantly followed" the mandate of that Court. Shepherd v. State, 341 U.S. 50, 71 S.Ct. 549, 95 L.Ed. 740 (1951), reversing this Court's decision to the contrary in Shepherd v. State reported at 46 So.2d 880 (Fla. 1950), on the authority of Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1950).
A new venire was selected. Now Silva complains in his present motion that the grand jury which rendered those two indictments, and the further indictment for the rape of a third woman by Silva, was improperly selected in violation of his constitutional rights.
At one point, as to the first two Silva indictments, the grand jury question was moot as to any alleged defect in the grand jury selection, since informations filed pursuant to those indictments would be sufficient without the necessity of grand jury indictments. This was the status of such offenses during the "hiatus" between Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and new Fla. Stat. § 921.141, effective December 8, 1972, restoring capital punishment, during which period there was no "capital punishment" per se which required an indictment.[2] Now, of course, all subsequent capital crimes require indictments and will proceed under the new Fla. Stat. §§ 775.082, 782.04, 921.141, F.S.A., eff. December 8, 1972, which this Court has just upheld as meeting constitutional requirements and U.S. Supreme Court criticisms.[3] Should such new statutes fail upon further review, the grand jury attack, as to both appellants, would again become moot.
Appellant Silva's principal assault is that he was not allowed a sufficient evidentiary hearing or the issuance of subpoenas to the present grand jurors chosen from the master list, in order to tell sufficiently, and to provide evidentiary support for, whatever alleged improprieties there might have been in the makeup of the master list from which the present grand jurors were chosen. The attempted inquiry of grand jurors who have already been duly qualified under the statutes to serve, *535 would not, in any event, be calculated to reveal the manner of their having been selected for the jury list; they would not be likely to have any knowledge of the why or wherefore of their names having been submitted. Discovery under CrPR 3.220(f), 33 F.S.A. is applicable only when the person to be deposed has "information relevant to the offense charged." The grand jurors could have no such personal knowledge, or they would have been disqualified in even considering the charge against the defendant. A grand jury is not, like a petit jury, subject to general voir dire inquiry.[4]
The grand jury panel may by statute in Florida be challenged "only on the ground that the grand jurors were not selected according to law." Fla. Stat. § 905.03, F.S.A. Fla. Stat. § 905.05, F.S.A. then explicitly states:
"When challenge or objection to be made.  A challenge or objection to the grand jury may not be made after it has been empaneled and sworn. This section shall not apply to a person who did not know or have reasonable ground to believe, at the time the grand jury was empaneled and sworn, that cases in which he was or might be involved would be investigated by the grand jury." (emphasis added)
So far as the record before us reflects, it appears that both appellants have waived their asserted challenge to the grand jury panel afforded them under Fla. Stat. §§ 905.02, 905.03 and 905.04, F.S.A.[5] They chose not to challenge the grand jury at the proper time under the statutes and cannot do so now.
A challenge to a grand jury panel or to individual grand jurors must in Florida under Fla. Stat. §§ 905.02, 905.03 and 905.04, F.S.A. be made, either by the State or "a person who has been held to answer" to the grand jury, prior to the empanelling of such grand jury or else such challenge is waived. This is essential to be done prior to such empanelling, as the statutes direct, in order that the court may act upon any timely challenge and, if disqualified, to discharge the panel or any individual jurors and promptly proceed to make different selections to take their places until a qualified grand jury is formed. §§ 905.06 and 905.07. A timely ruling upon challenges to the grand jury is essential to the efficient dispatch of the business of the grand jury without delay and to the prompt disposition of the cases and matters before it, assuring fair and speedy trials of those indicted and prompt discharge of those who are not. It is also expedient to the court's calendar and to the orderly and efficient dispatch of the matters before it. These are among the reasons supporting recognition of a waiver in the event the challenge to grand jurors is not timely made. The causes before the Court upon these appeals demonstrate such necessity, to avoid belated challenges and resultant delays. The statutes have provided the appropriate procedure and if not timely invoked, a challenge to the grand jury is waived.
After some inquiry had been made below, and there had been a denial of a *536 continuance, the causes proceeded to trial with only three days left to run under the Speedy Trial Rule No. 3.191. At the trial of Appellant Silva on all three charges of rape, Silva entered pleas of nolo contendere. He first attempted to enter such plea on a "conditional basis" subject to the outcome of his motions challenging the grand jury. Such conditional plea was correctly rejected by the able trial judge. At the time of the tender of such "conditional" plea of nolo contendere the judge unequivocally rejected it and stated in open court to defense counsel that "either you make the plea or you do not make the plea." Counsel then placed the defendant on the stand and he was questioned both by the court and his counsel and after lengthy discussions in respect to the defendant's understanding of the plea and the effect thereof, the defendant was asked by his counsel whether he plead "no contest" and the defendant responded under oath, "Yes". A second question by his counsel: "Are you willing to do that?" The defendant: "Yes". Thereafter the further inquiry was made by Silva's counsel: "Are you doing this voluntarily?" The defendant: "Yes". Mr. Hirschhorn: "Are you doing this knowing what you are doing?" The defendant: "Yes".
The choice was the defendant's; he made it and plead nolo contendere without condition; the court accepted it and that ended the matter insofar as a clear plea was concerned in this record.[6] Further inquiry of the defendant on the stand reflected his knowledge that he would be sentenced and placed "behind bars." He was further asked: "Do you understand that once you enter this plea of no contest, the judge will make it like you are pleading guilty and will sentence you as if you were guilty. Do you understand that?" The defendant: "Yes, you told me." Mr. Hirschhorn: "I told you that right?" The defendant: "Yes".
A plea of nolo contendere can be made and accepted in a capital case provided that the usual requirement of comprehension and understanding are reflected in the record, of the full meaning of the entry of such a plea and an understanding that it is in effect a "guilty plea" and that the defendant fully comprehends the penalty to which he may be subjected upon such a plea of nolo contendere. Full explanation and comprehension on the part of Defendant Silva is reflected in this record. See Peel v. State, 150 So.2d 281 (Fla.App.2d 1963) and discussion in Roberts v. State, 199 So.2d 340 (Fla.App.2d 1967). We are cognizant of our earlier Smith v. State, 197 So.2d 497 (Fla. 1967), holding that a plea of nolo contendere cannot be accepted in a capital case. Smith was, of course, based upon then Fla. Stat. § 912.01, F.S.A. which provided that in all cases "except where a sentence of death may be imposed, trial by jury may be waived by the defendant." But § 912.01 has since been repealed and such exception was thereby eliminated, so that a plea of nolo contendere is now available in all cases including capital cases.
A later attempt by Silva's counsel to withdraw the plea was rejected by the court which was a proper exercise of its discretion. CrPR 3.170(f). Counsel cites State v. Ashby, 245 So.2d 225 (Fla. 1971), for his position that the motion to withdraw the plea should have been accepted by the court. In Ashby, however, the judge chose to accept the plea offered there, along with the reservation; whereas in the instant case the judge chose not to do so which was the proper exercise of his discretion after sentence had been pronounced. CrPR 3.170(f). In each case (with opposite results) it was the proper discretion of the trial judge under the circumstances before him and in his best judgment.
*537 Appellant Silva having entered a plea which was accepted and upon which sentence was passed thereby effectively waived his earlier attack on the grand jury. The trial court correctly so ruled and we affirm. Chesebrough v. State, 255 So.2d 675 (Fla. 1971), citing Peel v. State, 150 So.2d 281 (Fla.App.2d 1963); Witherspoon v. State, 278 So.2d 611 (Fla. 1973).
Thus, we need not reach Silva's asserted constitutional issue with regard to the grand jury. However, the justiciable issue of constitutionality thus presented is sufficient to vest jurisdiction here to proceed with a determination of the other questions involved,[7] and Appellant Seay in adopting Silva's legal arguments, raises the same questions which we shall proceed to examine.
Appellants contend that new Ch. 70-1000 which charges the circuit judges with selecting the grand jury, and its underlying Ch. 57-550, are unconstitutional. The incidental, additional service by circuit judges under the statute in providing names of qualified persons for a grand jury master list neither transgresses the executive department of government nor constitutes a prohibited second "office" of "Jury Commissioner" vested in the circuit judge as contended. At most, such duty constitutes a mere adjunct of the same single office of circuit judge.[8]
Judge Friedman, or any other judge of the circuit constrained to do so, could of course recuse himself from a consideration of the challenge to the jury selection. Judge Friedman in good conscience chose to do so and the grand jury issue was thereupon transferred and acted upon by another of the circuit judges who had not actively participated in the drawing of the panel which served. As it turned out, this judge's ruling was based upon a waiver by plea in the case of Silva without reaching the merits. But even so, a disinterested local judge was authorized to act in the matter; his action was subject to appeal and open to any proper attack. There was no error.
We find Ch. 70-1000, Laws of Florida, to be constitutional per se and as applied in this case. The Legislature's determination to designate the circuit judges in larger counties to supply names of prospective grand jurors from which a panel is drawn, meets the requirements of reasonableness, accuracy and fairness. The multiple number of circuit judges in such large circuits is calculated to reflect a fair cross section of the citizens and those who are well qualified to serve in this important assignment in their courts as grand jurors. Such judges are elected at large and are responsive to the electorate; they are knowledgeable with regard to the various sections of the circuit, its citizens and groups within the area which make up the community, by reason of the wide and varied contacts which they have over the circuit. The function of circuit judges in selecting grand jury names for consideration and service is a proper one and is not at odds or divergent to their duties as judges. They are, in fact, particularly suited to the task.
Appellants further challenge the impartiality of the trial judge, who of necessity was one of the "jury commissioners" who "selected" the grand jurors' names for the master list, under new Ch. 70-1000, Laws of Florida, which constituted the circuit judges as the jury commission in the selection and approval of qualified prospective grand jurors. No showing was made of prejudice or bias on the part of any of the incumbent trial judges as a basis for appellants' motion to have an outside circuit judge from beyond the circuit *538 assigned for purposes of the trial. Absent proof of bias or prejudice of the trial judge, the challenge to his impartiality fails.[9]
Finally, the contention of each appellant that his confession should have been suppressed is without support in the record. Appellants were timely advised of their "Miranda Rights".[10] There was, moreover, a clear waiver of such rights prior to confession.
No error appearing, the respective causes are hereby
Affirmed.
CARLTON, C.J., and ROBERTS, ADKINS and McCAIN, JJ., concur.
ERVIN, J., dissents with opinion.
BOYD, J., dissents and concurs with ERVIN.
ERVIN, Justice (dissenting):
Prior to the trials in each of these cases, the Appellants filed motions to dismiss the indictments and requested evidentiary hearings to determine whether grand jurors rendering the indictments were improperly selected and in violation of Appellants' rights to equal protection of law and due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution. Upon reviewing the Circuit Court orders denying these motions, I find that we are not required at this time to pass upon the validity of Chapters 57-550 and 70-1000, Laws of Florida, or their validity as applied in this case. This result does not, however, divest us of jurisdiction under the Constitution. We should proceed to dispose of the appeal without reaching the constitutionality of the statutes for reasons hereinafter explained. See Mounier v. State, 178 So.2d 714 (Fla. 1965); Lissenden v. Board of County Commissioners, 116 So.2d 632 (Fla. 1959).

Case No. 43,075, Silva v. State

Appellant Silva's appeal stems from the consolidation of three separate cases against him involving three alleged rapes over a one-week period. He was originally charged on January 4, 1972 in two indictments returned by the Fall 1971 Dade County Grand Jury. Judge Friedman and Judge Knuck, of the Circuit Court of Dade County, were initially assigned to each of these cases.
Arraignments were held in both cases on January 19, 1972 and Appellant pleaded not guilty. Demand for a speedy trial was entered pursuant to Rule 1.191, F.R.Cr.Pr.[1] Judge Friedman granted defense counsel's request for ten days within which to file motions concerning Appellant's attack on the Grand Jury. Due to the absence of Judge Knuck, it was decided by stipulation of counsel that Judge Friedman would hear all preliminary motions in both cases. On February 1, 1972 defense counsel filed motions to dismiss the indictment or in the alternative to exclude the entire grand and petit jury panels as being unconstitutionally drawn pursuant to Rule 3.300, F.R.Cr.Pr., and Sections F.S. 40.01(1) and (3), and 97.041, F.S.A. Judge Friedman made findings of fact concerning Silva's challenge to the jury venire list and submitted certified questions for decision to this Court. As a result of our decision in State v. Silva, 259 So.2d 153 (1972), Dade County's petit jury system was declared unconstitutional.
While the litigation resulting in that decision was pending before this Court, Appellant Silva continued his assault on the Dade County Grand Jury. On February 16, 1972, Judge Friedman granted Appellant's motion for leave to take the depositions *539 of Honorable Marshall Wiseheart, Grand Jury Commission Chairman, and E.B. Leatherman, Secretary of the Grand Jury Commission. Judge Wiseheart, as a member of the bench for the Circuit Court for Dade County, was a Grand Jury Commissioner pursuant to the Laws of Florida, Chapters 57-550 and 70-1000. Appellant also served Mr. Leatherman with a subpoena duces tecum with directions to produce at the time of the taking of his and Judge Wiseheart's depositions the Dade County Master Grand Jury List. The depositions of Judge Wiseheart and Mr. Leatherman were taken, but the jury list was never produced.
Appellant's counsel filed several motions, including a motion for an evidentiary hearing for the purpose of resolving questions relating to the Dade County Grand Jury pool. Counsel alleged that said pool purposefully discriminated against blacks, women, "blue-collar" and low-income persons generally, and various age and ethnic groupings. Judge Friedman elected to recuse himself from hearing this attack on the Grand Jury, as he had sat as empanelling judge to the Fall 1971 Dade County Grand Jury, in addition to his being a Grand Jury Commissioner. Judge Wiseheart (who was Presiding Judge of the Eleventh Judicial Circuit), after refusing Appellant's "Suggestion for Appointment of a Circuit Judge from Another Circuit Court," decided that Judge Knuck should pass on these motions, as he had pending before him similar motions relating to the other indictment in Case No. 2867.
On February 29, 1972 Silva was charged in a third indictment by the same grand jury that had returned indictments in the previous two cases. It was agreed by counsel and all the judges involved that the three separate cases be consolidated for trial before Judge Friedman. Trial was set for March 6, 1972. On the morning of that day, prior to trial, Judge Friedman held a hearing in his chambers concerning Silva's various motions before the court. During the course of that hearing, defense counsel requested a continuance so that an evidentiary hearing and judicial ruling could be obtained on Silva's grand jury challenge. His request was denied and the cause proceeded to trial. Shortly after the jury was sworn in, Appellant entered a plea of nolo contendere. Judge Friedman accepted the plea, discharged the jury in the cases, and sentenced Silva on March 16, 1972 in each of the three cases.
Appellant's counsel never slackened his attack on the accusatory body which had returned indictments in those cases. The Appellant filed several motions on March 15 and 16, 1972, including a motion for the production of the Dade County Grand Jury Master List, a motion for an evidentiary hearing on his challenge to the Grand Jury, and a motion to subpoena 180 individuals whose names appeared on the list. Judge Knuck, who had retained jurisdiction as to the Grand Jury issue, prohibited Appellant from proceeding with the subpoenas and transferred Appellant's remaining motions on the Grand Jury challenge to Judge Wiseheart.
Judge Wiseheart denied all of Appellant's pending motions concerning the Dade County Grand Jury and held that Appellant's constitutional challenge on that body was deemed to have been waived by his plea of nolo contendere.[2] Appellant Silva then filed this appeal.

*540 Case No. 43,074, Seay v. State

Appellant Seay was indicted for the first degree murder of a security guard who was shot and killed during the armed robbery of an Army-Navy store in Miami, Florida. Seay moved to dismiss the indictment based upon an improper empanelling of the Fall 1971 Dade County Grand Jury, and urged the Circuit Court of the Eleventh Judicial Circuit of Florida, in and for Dade County, to declare Ch. 57-550 and Ch. 70-1000 of the Laws of Florida unconstitutional.
On April 12, 1972, Judge Kehoe entered an order which read in part as follows:
"8. Defendant-Seay filed a Motion to Dismiss the Indictment on the ground that the Grand Jury which returned that indictment was unconstitutionally impaneled, and further requests an evidentiary hearing thereon. Each of the other Defendants, through Counsel, has adopted this Motion. This Court has permitted the Defendant-Seay to supplement his Motion heretofore filed by filing the depositions of the Honorable E.B. Leatherman and the Honorable Marshall C. Wiseheart taken in Case of State v. George Silva, No. 2866, Circuit Court, Eleventh Judicial Circuit, Dade County, which depositions this Court has previously read. Based on the depositions and the law, Defendant's Motion to Dismiss and request for Evidentiary Hearing be and the same is hereby denied." (Emphasis supplied.)
Appellants have raised several points of law for review in their appeals to this Court. After hearing oral argument and making a thorough examination of the records and briefs contained in these appeals, I have determined that the following questions of law merit review:
I. Whether a plea of nolo contendere precludes a constitutional challenge to the grand jury which rendered the indictment.
II. Whether Appellants should have been afforded evidentiary hearings on the constitutionality of the grand jury which rendered the indictments.
III. Whether a circuit court judge who is also a grand jury commissioner should be allowed to rule on the constitutionality of the grand jury and its method of selection.

As to Point I:
Rule 3.170(a), F.R.Cr.Pr., allows a defendant, "with the consent of the court," to enter a plea of nolo contendere. The plea is a formal declaration by the accused that he will not contest the State's charge brought against him, and is construed for all practical purposes as a plea of guilty. See Peel v. State, 150 So.2d 281 (Fla.App. 1963). It is generally held that by pleading nolo contendere the defendant waives all formal defects in the proceedings and admits to allegations of the indictment. Chesebrough v. State, 255 So.2d 675 (Fla. 1971). However, substantive defects in the indictment are not cured by entry of the plea. Peel v. State, 150 So.2d supra at 292; see generally 89 A.L.R.2d 593.
Appellants have chosen to bring under constitutional attack the accusatory unit which returned their indictments by arguing that the Grand Jury was not properly drawn from a pool truly representative of the community and hence their Fifth and Fourteenth Amendments rights under the United States Constitution were violated. This is not the first time that the Dade County Grand Jury selection system has been scrutinized for possible violation of the Equal Protection clause of the Fourteenth Amendment. Cf. State v. Demetree, 213 So.2d 709 (Fla. 1968). When such an attack is undertaken by a defendant and, given the opportunity, he demonstrates a failure of a fair cross-section of the community being nominated for grand jury service, the defect is viewed as a serious *541 impairment of our criminal justice system. As Mr. Justice Black stated, speaking for the United States Supreme Court in Pierre v. Louisiana, 306 U.S. 354, 358, 59 S.Ct. 536, 539, 83 L.Ed. 757, 760 (1939):
"Indictment by Grand Jury and trial by jury cease to harmonize with our traditional concepts of justice at the very moment particular groups, classes or races  otherwise qualified to serve as jurors in a community  are excluded as such from jury service."
Thus, it would logically follow that the "fruit" of an improperly empanelled grand jury would be substantively defective and not subject to waiver by a plea of nolo contendere, provided timely objection to the jury panel had been entered.
Although this is a question of first impression in Florida, the North Carolina Supreme Court was faced with a similar issue in State v. Covington, 258 N.C. 501, 128 S.E.2d 827 (1963). Covington was charged in three separate indictments for assault with a deadly weapon, resisting arrest, and unlawfully attempting to escape confinement in the county jail. In each of the three cases the defendant moved to quash the indictment as having been returned against him by an illegally empanelled and composed grand jury in violation of the Fourteenth Amendment to the United States Constitution. He further moved that the trial court grant him a reasonable time to investigate the composition of the grand jury which returned the indictments against him; that the court issue process to require certain named officials to appear and testify in respect to the selection of grand jurors; that these individuals bring records and documents pertinent to the inquiry; and that a hearing be held on the motion to quash the indictments. The trial court denied all of these motions, and the defendant entered a plea of guilty. The North Carolina Supreme Court reversed the trial court, stating:
"Defendant has assigned these rulings as error in each case, and has perfected his appeal in each case. Under these circumstances, it is our opinion, and we so hold, defendant, by his subsequent pleas of guilty in each case, has not waived his objection to the grand jury which indicted him on the ground that it was illegally impanelled and composed in violation of his fundamental constitutional rights, and on the ground that because of a fundamental constitutional prohibition the grand jury was without jurisdiction to find valid indictments... ." Id. at 829. (Emphasis supplied.)
I see no reason to differentiate between a plea of guilty and a plea of nolo contendere for the purpose of deciding whether a defendant has waived his right to attack the sufficiency of the accusatory writ. In Chesebrough v. State, supra, we allowed the defendants to contest the validity of Section F.S. 800.04, F.S.A. on appeal after a plea of nolo contendere had been entered at trial. Appellant Silva should likewise be allowed to allege and contest the unconstitutional construction and application of Chapters 57-550 and 70-1000, Laws of Florida.

As to Point II:
In State v. Demetree, 213 So.2d 709 (Fla. 1968), we reversed an order of the Criminal Court of Record of Dade County which held that the indicting grand jury was constituted in violation of the Equal Protection clause of the Fourteenth Amendment to the United States Constitution. Demetree was charged with the offense of operating a building for the purposes of prostitution. His motion to quash the indictment and information was based, in part, upon the alleged failure of Dade County Grand Jury Commissioners to follow a grand jury selection procedure calculated to produce a fair cross-section of the community. "Following a hearing on such motion and the taking of testimony, the order brought here for review was entered." (Emphasis supplied.) Id. at 710. We based our reversal upon a review of the record which disclosed that the Grand Jury *542 was properly constituted and representative in that it included citizens of varying backgrounds.
"Conceding that a Grand Jury should represent a fair cross-section of the community, it does not necessarily follow that the Grand Jury Commissioners were required to compile figures on and select a proportionate number of prospective grand jurors from each and every group referred to above. It was affirmatively shown by the evidence that no attempt was made specifically to exclude any of those groups; and the record shows, also, that the Grand Jury which returned the indictment against the appellee did, in fact, represent a fair cross-section of the community." (Emphasis supplied.) Id. at 712.
The appeals instanter are readily distinguishable from the Demetree case in that the records presently under review contain no evidence as to whether the Fall 1971 Dade County Grand Jury represented a "fair cross-section of the community." Cassell v. State of Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1950). Although the depositions of the Chairman and the Secretary of the Grand Jury Commission were taken in an apparent effort to determine whether there was any merit to Appellants' arguments concerning their Grand Jury challenge, neither Judge Kehoe nor Judge Wiseheart gave any indication in their orders why the Appellants' requests for the elicitation of further testimony and evidentiary hearings were denied. Since the depositions were not included in the record at the trial level, and evidentiary hearings were never held, it is impossible for this Court to determine whether the denial of Appellants' motions was a proper exercise of judicial discretion.
The record suggests that the absence an evidentiary hearing in the cases presently under review is attributable in large part to the Circuit Court's failure to grant Appellant Silva a continuance. We have previously held that as a general rule the granting or denial of a motion for continuance is within the sound discretion of the trial court and will not be disturbed on appeal unless there has been a palpable abuse of that discretion. See Raulerson v. State, 102 So.2d 281 (Fla. 1958). The record indicates that the request for a continuance stemmed from the Dade County Circuit Court's refusal to seek assignment of a circuit court judge from another circuit within the state to hear the matter and from its own juggling of the Grand Jury issue among members of its bench. The consequences of those actions were: one judge recusing himself and the others delaying an evidentiary hearing and judicial determination until the speedy trial rule had nearly extinguished the cause. While appreciating the trial court's dilemma in that regard,[3] it appears to have been occasioned by its own temporizing. Appellant Silva's successful challenge to the petit jury and his relentless attack on the Grand Jury should have apprised the trial court of the thrust and importance of Appellants' charges. When the request for a continuance was disallowed, the Appellants were forced to go to trial, resulting in the plea of nolo contendere by Silva and conviction of Seay, prior to a determination as to whether the Grand Jury was properly constituted. Not having an opportunity to present evidence on the pretrial motion, their cases were seriously prejudiced by having no trial court determination on the sufficiency of the Grand Jury and nothing for an appellate tribunal to review other than the lack of a hearing.
In State v. Demetree, supra, 213 So.2d at 713, we stated:
"It is well settled that the burden is on the accused to plead and prove, with the greatest accuracy and precision, the irregularities *543 in the selection of grand jurors which are claimed to have vitiated an indictment ... Here, there is no allegation or suggestion that any of the grand jurors who returned the indictment against the appellee [defendant] were not in fact duly qualified to serve as such. There is no allegation that the master Grand Jury list, from which their names were drawn by lot, contained any unqualified jurors, nor is there any evidence whatsoever that such master list did not fairly represent a cross-section of the community."
Appellants sought to prove their allegations concerning irregularities in the selection of grand jurors. The depositions of the Secretary of the Grand Jury Commission, E.B. Leatherman, and the Grand Jury Commission Chairman were taken. Mr. Leatherman was directed by subpoena duces tecum to bring the Grand Jury master list to the deposition. He failed to bring the list and subsequent efforts by defense counsel to obtain the list were thwarted by the trial court, without setting forth any basis for the denial. Court permission to subpoena members of public record of the Grand Jury list was also denied. If the Grand Jury lists and the names thereon are made unavailable and all efforts to obtain an evidentiary hearing are thwarted, it is unrealistic to expect a defendant to meet his burden of proof as outlined in Demetree, supra.
In light of our pronouncement in Demetree that "it is the composition of the Grand Jury list, and not the particular Grand Jury which returns the indictment, which determines whether `equal protection' has been denied," it becomes obvious that where defendants are denied an opportunity to offer into evidence at an appropriate hearing testimony concerning the composition of the master list and their efforts to gain access to the list itself in order to challenge the grand jury selection process are denied, the result is a denial of due process and equal protection of the laws as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. See Reece v. Georgia, 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77 (1955). The only way that the Appellants could prove that the Grand Jury was not truly representative of the community was by taking testimony and having it introduced at a hearing. Under these circumstances, it was error to deny the Appellants evidentiary hearings on the constitutionality of the Grand Jury which returned their indictments.

As to Point III:
The last question for consideration concerns the propriety of having a circuit court judge who is also a grand jury commissioner pursuant to Laws of Florida, Chapters 57-550 and 70-1000, rule on the constitutionality of the grand jury and its method of selection. Although no evidentiary hearings were ever held on Appellants' motions relating to the Grand Jury attack, some discussion herein may obviate the need for review of this question upon the completion of future hearings.
Under Chapter 57-550, Laws of Florida, the Legislature created a grand jury commission in all counties having a population of 150,000 or more. Section 6 of the act provides in part:
"The Grand Jury Commission shall meet annually ... and prepare a list of five hundred (500) names of persons qualified under the provisions of this act ....
"In preparing a list of names ... the Grand Jury Commission shall make such investigation as it may deem necessary to determine the qualifications and moral fitness of persons to serve upon the Grand Jury."
Under Chapter 70-1000, Laws of Florida, Chapter 57-550 was amended so as to create a grand jury commission composed of the circuit judges of the judicial circuit encompassing the geographical boundaries *544 of those counties with a population of 450,000 or more. Thus, the Fall 1971 Dade County Grand Jury was the result of a list prepared by Circuit Court Judges of the Eleventh Judicial Circuit.
Shortly after Appellant Silva commenced his attack upon the Dade County Grand Jury pool, Judge Friedman recused himself from hearing and deciding the challenge. This recusal was based upon his appreciation of the difficulties and conflicts involved in having a Grand Jury Commissioner who had aided in the preparation of a grand jury list "switch hats" and rule on the constitutionality of that selection process as a jurist.[4] It was not based upon any grounds for disqualification of judges as set forth in Section F.S. 38.02, F.S.A. Under these circumstances the matter of voluntary recusation, while within the province of each jurist hearing the cause, should nevertheless be guided by the maxim that no judge shall preside in a case in which he is not "coldly neutral," impartial, and independent. State v. Revels, 113 So.2d 218 (Fla.App. 1959), and cases cited therein. I would therefore urge that the Circuit Court, in case of a Federal Court remand of this cause, reconsider Appellant Silva's motion for the assignment of a circuit judge from another circuit and act in its sound discretion so to insure that no suspicion is cast on the fairness and impartiality of the tribunal hearing the issue at bar.
I deem it premature to attempt to pass upon the validity of the challenged statutes in a vacuum without benefit of the factual proofs adduced at an evidentiary hearing and appropriate findings thereon. At this stage Appellants' due process rights below have not been satisfied and the case is not ripe for constitutional determination. Compare Fontaine v. United States, 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169, decided by the Supreme Court of the United States, April 2, 1973.
A finding that the trial court erred in not affording Appellants an evidentiary hearing on whether the Dade County Grand Jury was properly constituted does not require vacation of judgments and sentences entered against them at this time. Compare Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, and Fowler v. State (Fla. 1971), 255 So.2d 513. Instead, the cause should be remanded to the Circuit Court of Dade County with direction to conduct such hearings as are necessary for the proper resolution of that issue, in conformity with applicable Federal decisions. If the trial court should find, following such evidentiary hearings, that the indictments in these cases were returned by a properly constituted grand jury, the adjudications and sentences entered below would remain final as to that issue, subject, however, to further consideration of the question of the constitutionality of the challenged statutes.
If, however, the trial court should determine that the defendants were indicted by a grand jury in violation of their constitutional rights, the court should be directed to vacate the adjudications of guilt and sentences, and that further proceedings in these cases be in accordance with applicable law. Compare State v. Turner, 168 So.2d 772 (Fla.App. 1964); Burns v. State, 89 Fla. 494, 104 So. 783 (Fla. 1925).
*545 It appears clear to me the Appellants were arbitrarily denied the right and opportunity to perfect their challenge to the Grand Jury for the reasons explicated herein; that they did not waive this right but were convicted without being afforded appropriate hearing on their challenge.
BOYD, J., concurs.
NOTES
[1] Fla. Const. art. V, § 3(b)(1) (1973), F.S.A.
[2] Donaldson v. Sack, 265 So.2d 499 (Fla. 1972).
[3] State v. Dixon, 283 So.2d 1 (Fla. 1973), filed July 26, 1973.
[4] United States v. Knowles, 147 F. Supp. 19 (D.D.C. 1957); State v. Walla, 57 N.D. 726, 224 N.W. 211 (1928).
[5] "905.04 Grounds for challenge to individual prospective grand juror. 

(1) The state or a person who has been held to answer may challenge an individual prospective grand juror on the ground that the juror:
(a) Does not have the qualifications required by law;
(b) Has a state of mind that will prevent him from acting impartially and without prejudice to the substantial rights of the party challenging;
(c) Is related by blood or marriage within the third degree to the defendant, to the person alleged to be injured by the offense charged, or to the person on whose complaint the prosecution was instituted.
(2) The state may challenge an individual prospective grand juror on the ground that the prospective juror is surety on the bail undertaking of any person whose case will come before the grand jury."
[6] Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); Tollett, Warden v. Henderson, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); Davis v. United States, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973).
[7] Lissenden v. Board of County Comm., 116 So.2d 632 (Fla. 1959); Mounier v. State, 178 So.2d 714 (Fla. 1965).
[8] State ex rel. Gerstein v. Baker, 243 So.2d 464 (Fla.App.3d 1971); State v. Clemmons, 150 So.2d 231 (Fla. 1963); Op.Atty.Gen. 067-19, Apr. 13, 1967.
[9] Cannon v. Churchwell, 195 So.2d 599 (Fla. App.4th 1967); Porter v. State, 160 So.2d 104 (Fla. 1964); Akins v. Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692.
[10] Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[1] Presently Rule 3.191, F.R.Cr.Pr.
[2] Judge Wiseheart's order filed April 7, 1972, stated in part:

"ORDERED and ADJUDGED:
"1. Defendant's Motion to Set Evidentiary Hearing on his challenge to the Grand Jury be and the same is hereby denied.
"2. Defendant's application for the Dade County Grand Jury master list be and the same is hereby denied.
"3. Defendant's application to subpoena the persons whose names appear on the public record of the Spring, 1970, and Fall, 1971, Grand Jury List be and the same is hereby denied.
"The Defendant having previously entered his plea of Nolo Contendere to the charges herein, and said plea having been accepted by the Honorable Milton A. Friedman, Judge of this Circuit Court, Defendant's challenge to the Dade County Grand Jury be and the same is hereby deemed to have been waived." (Emphasis supplied.)
[3] The issue as to whether a continuance under such circumstances should be "charged" to the State or to the defendant was never reached at the trial level and is therefore not discussed here.
[4] At a hearing held on February 25, 1972, Judge Friedman explained his reasons for recusing himself by stating:

"When the present Grand Jury was set up, 25 Circuit Judges, the Grand Jury Commissioners, they devised the method by which we would select a Grand Jury. We all unanimously agreed on the method.
* * * * * *
"So what I am saying is that it would be unfair for me as a jurist to make a decision in this case, when I am already prejudiced and biased in advance on behalf of the current set up. I could not be fair. I know this is the right way of doing it, I feel. I have proved it  I would be fair, obviously, and I will always try to be fair, but I do not think that I can sit on judgment on something which I have helped institute."