## STATE v. BRYANT.
No. 78-1240 CF.

Circuit Court, Palm Beach County, Criminal Division.

September 14 and 18, 1978.

Maurice J. Hall, Assistant State Attorney, for the state.

James K. Green, Assistant Public Defender, for the defendant.

CARL H. HARPER, Circuit Judge.

*Order September 14, 1978:* Defendant, a black female, is, charged by indictment filed June 6, 1978 with first degree murder of a black male on May 27, 1978. She is represented by Assistant Public Defender James K. Green, and is free on bond with jury trial set for next Monday, September 18, 1978 in West Palm Beach. She did not request a jury trial in the Glades Jury District where she resides and where the homicide was committed. Defense counsel filed a motion to dismiss indictment and quash petit jury panel on July 21, 1978 and a motion for continuance on September 5, 1978. Both motions came on for hearing on September 12 and 13, 1978 at which evidence was received in support of and in opposition to the motion to dismiss indictment and quash jury panel. Respective counsel filed memoranda for the court's assistance.

Due to the complexities of the evidence and time limitations upon the undersigned, the evidence heard will not be summarized herein. The evidence was duly reported and recorded to perfect the record for appeal purposes. Likewise, defendant's motion to dismiss indictment and quash petit jury panel speaks for itself as to the contentions and no useful purpose would be served to summarize it. Basically, the motion contends that Section 40.01(1), Florida Statutes, is unconstitutional on its face and as applied herein in that it systematically excludes from grand and petit juries certain cognizable classes namely young adults (ages 18 to 30 years), blacks and migrant workers, thereby resulting in significant under-representations of the classes in the jury selection process, denying defendant a fair and impartial trial before a true representative cross-section of her community, contrary to federal and state constitutional provisions.

It is fundamental that a statute under attack is presumed to be constitutional on its face, and the defendant has the burden to prove otherwise. The statute now under attack has never been held to be *facially* unconstitutional by the Supreme Court of Florida or any federal court (including the U. S. Supreme Court) which would be binding on this court. The contrary is true as evidenced by *State v. Silva,* 259 So.2d 153 (Fla. 1972); *Reed v. State,* 292 So.2d 7 (Fla. 1974); *Wilson v. State,* 306 So.2d 513 (Fla. 1975);

*Wilson v. State,* 330 So.2d 457 (Fla. 1976); *Jones v. State,* 289 So.2d 385 (Fla. 1974); *Mask v. State,* 289 So.2d 385 (Fla. 1974); and *Johnson v. State,* 293 So.2d 71, each of which has held the statute to be constitutional. The quantum of proof required under a defendant's burden is in conflict under various authorities. Defendant contends that once she proves a significant comparative under-representation of a cognizable class, a prima facie case has been made out shifting the burden to the state to prove lack of systematic exclusions of constitutional proportions.

In meeting that burden, defendant called Abbott Farris, Ph.D., professor of sociology at Emory University, Atlanta, Georgia, as an expert witness. Dr. Farris testified that based on a 1970 U. S. Census report for Palm Beach County and a Gallup poll it was his expert opinion that young adults (ages 18-30 years) have attitudinal behavior different from older adults. For example, more young adults favor —

1. amnesty for draft dodgers and evaders,

2. pre-marital sex,

3. abortion,

4. right-to-die laws,

5. busing for racial balance,

and have distinct differences on basic values dealing with life, death and sex, but only moderate differences on administration of justice, but oppose the death penalty by 19% more than older adults. As a matter of hindsight, the undersigned feels relieved that some time ago he refused to authorize an expert witness fee plus travel expenses for the above "expert" testimony, and firmly believes the average person could make the same conclusions as the expert without any scientific study, avoiding unnecessary expenditure of public funds.

Additionally, defendant introduced several exhibits and called Perry Holland, Ph.D., assistant professor of mathematics at the University of Miami, as an expert witness in statistical analyses in the jury selection process, and discrimination problems in the field of statistics and probabilities. Numerous exhibits and charts were introduced into evidence to assist Dr. Holland in stating his expert opinions and reasons supporting them. In short, he testified that in 1978 —

1. there is comparative under-representation of blacks on Palm Beach County voter registration rolls of 40.3%,

2. there is comparative under-representation of blacks on Palm Beach County grand juries of 77.6%,

3. there is comparative under-representation of young adults on voter registration rolls of 34.8%

4. there is only a .000061 probability of a female being selected as grand jury foreman in fourteen successive grand juries, and

5. that it is 2.63 times more likely that a white person would serve on the grand jury that indicted defendant than would a black person.

Also, defendant called an assistant state attorney and the deputy clerk in charge of the local jury pool who also serves as secretary to the jury commission. They testified as to the grand and petit jury selection process practiced locally, after which an investigator of the public defender's office testified as to the racial makeup of grand jurors for the last five years. *The investigator did not investigate the racial makeup of the pool from which the grand jurors were selected at random.*

The court reserved ruling on the defendant's motion to have the court find a prima facie case. Thereafter, the assistant state attorney presented his case and called his only witness, Mr. Preston Tillman, a black man, chairman of the Palm Beach County Jury Commission. In essence, he corroborated the testimony of the deputy clerk as to the jury selection process and that cards from which the jurors are selected do not identify the race of the juror and that the selection is done *purely at random* without any perusal of the cards with the presence either of a county judge or circuit judge. Thereupon, the court re-called as a court witness the deputy clerk who testified as to the jury selection process of the Glades Jury District and the racial composition of the registered voters in that district.

The court has read and considered defendant's motion and the memoranda in support and in opposition thereto, the evidence, argument and authorities relied on by the parties. Unfortunately, due to the heavy case load of this court and time limitations incidental thereto, the undersigned simply does not have the luxury of the assistant public defender in spending more than two hundred hours preparing and researching the issues raised in this pre-trial motion. This court has an obligation to the many defendants who are in jail unable to make bail and who have arguable issues pending before him to divide his time among them without undue preference and discrimination. Mr. Green is to be complimented for his dedication to this defendant's case. Nevertheless, it is unfor-

tunate that some fraction of his time has not been devoted to preparing for the trial itself on the merits, or that someone else in his office could not have assisted him in pre-trial discovery. The court is in a "can't win for losing" situation on ruling on defendant's motion for continuace. In denying the motion, the court is inviting possible reversible error on a claim of ineffective assistance of court appointed counsel who claims to be unprepared on the *merits* of the case. At the same time, the court cannot handle its caseload to meet the personal priorities of counsel, and must control its trial docket.

This court is of the opinion that the defendant has failed in her burden to prove prima facie discrimination in the jury selection process in this case. Proof of under-representations of some class (sex, age, race, parental status or employment) alone is insufficient, absent evidence of systematic exclusion in the process or a process that provides an opportunity for discrimination. Unlike *U. S. v. Butera*, 420 F.2d 564, relied on by defendant, the Florida statute under attack is not a "key man" system of jury selection. An impartial jury can be assured even though members of one's class are not present either on the jury or in the jury pool, so long as no systematic exclusion is involved. *Hoyt v. Florida*, 82 S.Ct. 159. Likewise, *Castaneda v. Partida*, 97 S.Ct. 1272, relied on by defendant is distinguishable in that the Texas statute authorized the "key man" system. Unlike "key man," the local procedure is a *random* selection without opportunity for discrimination. The jury is not hand picked!

The U. S. Supreme Court "has never announced mathematical standards for demonstration of systematic exclusion of blacks." *Alexander v. Louisiana*, 92 S.Ct. 1221, relied on by defendant. But, unlike *Alexander*, the jury selection process in this case does not involve racial designation on any of the jury listings, and is racially neutral. Clearly, a defendant is not constitutionally entitled to a proportional representation of his race on either the jury panel or the jury that indicts or tries him, nor is he entitled to have a member of his race on either jury, provided, of course, there is no systematic exclusion involved or an opportunity thereof. See *Swain v. Alabama*, 85 S.Ct. 824, relied on by the defendant. Defendant claims subsequent cases have eroded *Swain*, but the cases relied on for that contention are either distinguishable from the instant case, or not binding on this court, but merely persuasive. See, for example, *Turner v. Fouche*, 90 S.Ct. 532, involving *subjective* judgment in selection of grand jurors, whereas in the instant case no subjective judgment in the jury selection under Section 40.01 (1) is permitted or practiced under the proof. The selection is neutral and randomly conducted. See also *Alexander v. Louisiana*, supra,

relied on by defendant. In *Alexander*, racial identifications were plainly visible to the jury commission in the selection process involving culling-out procedures thereby providing an opportunity to discriminate, but not present in the instant case.

Even if the defendant has proved a marked disparity between the percentage of a class (race, sex, parental status or employment) among persons putatively qualified to serve as jurors and the percentage of the class actually on jury lists, defendant must also demonstrate "the discriminatory result in the jury list accompanied a system of jury selection permitting possible (class) identification of potential jurors" affording an opportunity to discriminate. *McGhee v. King*, 518 F.2d (5th C.A. 1975). Defendant has failed to demonstrate the latter proviso.

While the defendant may have shown a disproportionate representation of some "class," cognizable or not, she has failed to produce a scintilla of evidence that such under-representation resulted from a systematic exclusion, intentional or otherwise, as a result of Section 40.01(1) on its face or as applied. As conceded by defendant in her memorandum, unregistered voters are not a cognizable group. As to the under-represented groups that may be cognizable, defendant has failed to demonstrate Section 40.01(1) is unconstitutional as applied as to population ratios, inasmuch as the court finds on the evidence as a whole the selection process was done randomly, without subjective considerations as to any class and without any discrimination or opportunity to discriminate as to any class or status. There was no systematic exclusion. *Foxworth v. State*, 267 So.2d 647 (Fla. 1972). Disparity in racial ratio is not sufficient absent systematic exclusion. *Porter v. State*, 160 So.2d 104 (Fla. 1964). As to defendant's claim of sexual discrimination, no systematic exclusion has been shown. See *Hoyt v. State*, 119 So.2d 691 (Fla. 1959), affirmed 82 S.Ct. 159. As to the exemption of mothers with children under 18 years of age, contrary to defendant's claim, no showing of hardship or need is required and the exemption does not exclude a distinctive class. *McArthur v. State*, 351 So.2d 972 (Fla. 1977). Defendant cites no authority to support her claim the exemption unconstitutionally discriminates against fathers of such children. As to defendant's claim regarding exclusion or under-representation of migrants, there has been no proof as to the existence of such a cognizable group, and even assuming such proof, defendant is not entitled to demand the presence of migrants on either the grand jury or petit jury, absent systematic exclusion. Defendants must prove that the *pool* from which the grand or petit jurors were randomly drawn did not represent a true cross-section of her community without systematic exclusion. *State v. Demetree*, 213 So.2d 709 (Fla. 1968).

It is ironic that defense counsel complains of an under-representation of young adults, blacks, mothers of young children and migrants on the petit jury panels in the jury district where the case is pending trial when he readily concedes the existence of the Glades Jury District where registered black voters outnumber registered white voters. Interestingly enough, he offered no expert testimony concerning "comparative under-representation" in that jury district. Defendant wants her cake and to eat it, too! If she truly wants a petit jury with more blacks and migrants, she can request the trial be transferred to the Glades Jury District where chance thereof would be enhanced substantially. However, she chooses not to do so, preferring to stand trial before a jury she contends is not representative of her peers (cross-section), hoping reversible error may be committed by the court on the issues herein.

In conclusion, it is fundamental law that the fixing of minimum qualifications for jury service is strictly a matter for the legislature, and the judicial branch cannot interfere except to construe the statute on constitutional questions. If the defendant, or the public defender, desire a more liberal statute regarding jury service qualifications authorizing selection from other sources, such as welfare rolls as suggested by Mr. Green, their remedy is with the legislature not with this court. Otherwise, the doctrine of separation of powers is meaningless.

Nevertheless, it is difficult to conceive of an alternative method of jury source lists the legislature might authorize that could antiseptically meet the demands of this defendant and all others. The public defender and the *Palm Beach Post* suggest social security lists, drivers licenses, welfare rolls, census lists, utility customer rolls, to mention a few. The problem remains what would be the comparative under-representation of young adults if social security lists were the source. How many migrant workers, young or old, have Florida driver's licenses or utility bills; how many people are on the welfare rolls under fraudulent identifications; how many migrants, young or old, are included in census rolls, and so forth.

The motion to dismiss indictment and quash petit jury panel is therefore denied. The motion for continuance is reluctantly denied even though court-appointed defense counsel claims to be not ready or prepared to defend at trial. If he is unprepared, it is because of conscious, deliberate judgmental decision on his part, on his client's behalf, to devote all his time since appointment on his pre-trial motion to dismiss rather than to prepare for trial on the merits. As trial strategy, he put all his "eggs in one basket" with the apparent knowledge and consent of his client, to their peril.

As an aside, there is no doubt whatsoever in this court's mind that there is no discrimination of any kind permitted or practiced in the drawing of the venire of potential grand and petit jurors by those charged with that duty here in Palm Beach County. Likewise, there is no doubt that the petit jury to be selected to hear this case, regardless of their makeup, will give defendant a fair and impartial trial, free from all odious prejudice, bias or discrimination.

*Order, September 18, 1978:* Defendant is charged with first degree murder, is free on $15,000 surety bond and is represented by the public defender. At an evidentiary hearing recently held, the defendant's motion to dismiss indictment and quash jury panel was denied as was defendant's motion for continuance in a written order filed September 14, 1978. Defendant is now before the court for jury trial at the top of the trial calendar containing 35 cases scheduled for trial. However, subsequent to the entry of the written order denying the above mentioned motions, defendant filed her motion for disqualification and substitution of judge, pursuant to Rule 2.230 on late afternoon September 15, 1978.

The court has reviewed the motion to disqualify, its supporting affidavits and amendments thereto, as well as argument of counsel, and based thereon makes the following findings —

1. The motion is timely filed, even though within ten days prior to trial, as the alleged grounds therefor occurred within the ten day period except that the allegations relating to the August 21, 1978 hearing on the motion to authorize payment of expert witness fees are not timely. Nevertheless, the court considers the allegations in this ruling now being made.

2. The court is without authority to pass on the truth or falsity of the alleged facts supporting the claim of bias and prejudice and therefore refrains from doing so.

3. The court has jurisdiction to test the sufficiency of the supporting affidavits to determine if they contain factual allegations, assumed to be true, as distinguished from mere conclusions, to support the claimed disqualification, creating in the mind of the accused a well founded fear she cannot receive a fair and impartial trial before the undersigned. *State v. McFarlane,* 318 So.2d 449 (2 DCA 1975). In doing so, the court must consider what is in the mind of the defendant regarding such fear, rather than what is in the mind of the court, or in the mind of defense counsel, for that matter. *Crosby v. State,* 97 So.2d 181 (Fla. 1957). Frivolous or fanciful allegations are not sufficient to warrant disqualification. *State v. Caro,* 17 So.2d 79 (Fla. 1944) and *State ex rel. Gerstein v.*

*Stedman,* 233 So.2d 142 (3 DCA 1970), certiorari denied by Florida Supreme Court in 238 So.2d 615 (1970). See also *Seay v. State* and *Silva v. State,* both cases in 286 So.2d 532 (Fla. 1973), certiorari denied by the U. S. Supreme Court in 95 S.Ct. 84. See also, *Wilson v. Renfroe,* 91 So.2d 857 (Fla. 1956).

In *Wilson,* the state attorney filed a motion to dismiss criminal charges pending against the defendant which was heard ex parte. Of course, there was no reason for defendant to object, but to his chagrin the trial judge denied the state's motion and directed the state to file additional charges as well. Thereupon, defendant moved to disqualify the trial judge, which motion was denied. Prohibition was denied by the circuit court and defendant's appeal to the Supreme Court resulted in affirmance, the Supreme Court saying —

> ". . . a motion to disqualify with its supporting affidavits must be more than the mere proclamation of a fear that the judge is prejudiced. The affiants must tender some actual, factual foundation for the assertion of the fear. *A contrary rule would lead to the conclusion that regardless of the impartiality of the judge, he could be disqualified merely because he had made some ruling in the cause adverse to the (defendant) despite the soundness of his ruling."*
> (emphasis mine)

The easy and safe thing for the court to do is to grant the motion now before the court. This court has no jealous affinity or attachment to this or any other case assigned to him, and would welcome outside help from any source in handling a heavy caseload. The court cannot in good conscience decide the issue on the easiest alternative, but must do so in accordance with his understanding of the law and with due regard to the precedence that might result therefrom. Although the motion is supported by affidavit that it is filed in good faith, doubt thereof is apparent by virtue of the fact it was not filed until after entry of the written order denying the aforementioned pre-trial motions. To grant, ipso facto, a motion to disqualify obviously filed due to a grievance over an adverse ruling which is no wise relates to defendant's guilt or innocence would seriously disarm every judge of his authority and impede the administration of justice. Every judge must be free to rule on the law without fear of a claim of disqualifying prejudice. If a defendant is aggrieved of an adverse pre-trial ruling, let him (or her) appeal in the event of a conviction rather than disqualifying the judge, thereby delaying justice and perhaps facilitating judge shopping. Furthermore, to grant the motion would effectively accomplish a continuance of the trial, already denied the defendant, inasmuch as the other judges have their own schedules to contend with. In that regard, defense counsel filed a second motion

to continue on this date, September 18, 1978 on similar grounds previously heard and denied.

The motion to disqualify and the affidavits, including the amended affidavits of Public Defender Jorandby, do not allege facts, but mere proclamations, to support a well founded fear in the mind of this defendant that she cannot receive a fair and impartial trial before this court due to his alleged bias and prejudice. The allegations are based primarily on adverse pre-trial rulings of this court which have no relation or effect on defendant's guilt or innocence or the trial thereof on the merits. More importantly, the affidavits complain of the court's rulings and pronouncements as they relate to defense counsel's lack of trial preparation as distinguished from any pre-conceived opinions concerning the defendant. In other words, it is defense counsel, *not the defendant*, who complains. Construing the affidavits in the best light to the defendant, and assuming them to be true, they do not allege facts of a well founded fear in the mind of the defendant, but only chagrin on the part of the public defender.

The court does not believe the motion to disqualify is filed in good faith but is a subterfuge to gain a continuance already denied. Therefore, after careful and painful consideration, realizing the perfunctory nature of the motion, the court denies the motion to disqualify but without prejudice to defense counsel to file a suggestion for writ of prohibition in the Fourth District Court of Appeals within a reasonable time and if filed the trial of this case will be abated pending the rule nisi, if any. As a result the defendant will gain additional time within which her counsel can better prepare for trial on the merits, and cannot suffer any prejudice by this order.